[No. 466. Decided September 17, 1892.]

A. CROOK, *Appellant*, v. HENRY HEWITT, JR., AND THE EVERETT LAND COMPANY, *Respondents*.

WATERS AND WATER COURSES—DIVERSION OF STREAM—INJUNCTION.

The owner or tenant of lands on the bank of a stream has a natural right to the use of the water which flows in the stream adjacent to his lands, as it is wont to run, without diminution or alteration.

A tenant of lands may enjoin the threatened diversion of the waters of a stream running over his land where the diversion is to some other locality, and is not made for the use of the land by the proprietor above or below him on the bank of the stream.

*Appeal from Superior Court, Snohomish County.*

*Stratton, Lewis & Gilman,* for appellant.
*Brown & Brownell,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—In this case, after the testimony of the appellant was in, the respondents moved to dismiss the action on the two following grounds:

(1) "That no interest whatever to this plaintiff in and to the stream known as Wood's creek has been shown in the testimony now before the court." (2) "That no evidence has been introduced before this court showing that the Everett Land Company, or Henry Hewitt, is intending to or about to divert a sufficient quantity of water from that stream to in any way prevent this plaintiff from having sufficient water to irrigate that land."

The motion was sustained and the cause dismissed. We have examined all the authorities presented by both appellant and respondents, and it seems to us that the law is uniformly settled that every proprietor of lands on the bank of a river has naturally an equal right to the use of

the water which flows in the stream adjacent to his lands as it was wont to run, without diminution or alteration. No proprietor has a right to use the water to the prejudice of other proprietors above or below him, unless he has a prior right to divert it or a title to some exclusive enjoyment. He has no property in the water itself, but a simple usufruct while it passes along. *Aqua currit et debet currere, ut currere solebat* is the language of the law. Though he may use the water while it runs over his land, he cannot unreasonably detain it or give it another direction, and he must return it to its ordinary channel when it leaves his estate. This is the law as pronounced by Chancellor Kent in 3 Kent's Commentaries, page *39, and, without particularizing, it is substantially the law as announced by all the text writers and courts. All the modification of the rule that there has been, is to allow a reasonable use, because, as is said by many of the courts, to hold that there can be no diminution whatever of the water would be to deny any valuable use of it, and therefore the injury that is incidental to a reasonable enjoyment of a common right can demand no redress. Indeed, this can scarcely be called a modification of the text, but rather a construction which has always been recognized; and the reasonableness of the use is a question of fact to be passed upon by the court or jury. But it must be borne in mind that this liberal condition attaches only to the use of the water as an incident to the land, and not to the diversion of the water from the land. A riparian proprietor may divert the water from the stream as it passes through his own land without license from the proprietors above him, if he does not obstruct the water from flowing as freely as it was wont; and without license from the lower proprietors if he restores the water to its natural channel before it enters their land, and does not materially diminish its flow. The distinction is to be observed between the right to divert or change the course

of the stream itself so as to turn it away from a lower proprietor, and the right to take water from the stream. The first is wholly unlawful; the second may be exercised to a reasonable extent. Gould on Waters (2d ed.), § 213.

So in *Dumont v. Kellogg*, 29 Mich. 420, 18 Am. Rep. 102, a case cited by respondents, the court in a most marked manner recognizes this distinction when it says:

"And in considering the case it may be remarked at the outset that it differs essentially from a case in which a stream has been diverted from its natural course and turned away from a proprietor below. No person has a right to cause such a diversion, and it is wholly a wrongful act, for which an action will lie without proof of special damage."

And this distinction seems to be thoroughly recognized by the law, although the cases frequently in speaking of the use of the water, refer to the taking as a diversion; but a glance at the cases is sufficient to show that the diversion spoken of is a diversion for the use on the land and not a diversion to some other locality.

But, under our view of the testimony and the pleadings in this case, the appellant must prevail here under either theory of the law. For the case was heard below on the theory that the amount of water which respondents intended to divert would not diminish the flow to the damage of appellant. This was an issue which was fairly raised by the pleadings. The complaint alleges that the defendants, in violation of plaintiff's rights, entered upon said land and began the construction of a large ditch for the purpose of taking the water from said stream, etc., and of diverting the same from the said plaintiff's land and carrying the said water northerly towards the town of Lowell, and thence discharging said water into the waters of the Snohomish river, etc., to plaintiff's irreparable damage, etc. The respondents in their answer set up a purchase of a portion of said land from Wood, appellant's lessor, and the purchase

of a right-of-way for a pipe line over the lands described, and also the right to divert the flow of water running through Wood's creek, with the exception of a certain amount reserved by Wood, and allege that in accordance with the rights acquired under such purchase they began the erection of a dam, and also the construction of a trench or ditch for a line of water pipe from said dam over and along the right-of-way purchased as aforesaid to the town of Lowell; but allege that the erection of said dam does not divert the whole of the stream mentioned, and assert that on the contrary the flow of the stream will not be seriously diminished by reason of water running into the stream from gulches below the dam, and allege that no part of the lands leased by Wood to the appellant is in need of irrigation, etc. So that the answer, instead of denying the threatened diversion of the water, really admits it, and defends the action on the grounds that there was no substantial diminution of the water in the creek by reason of the diversion, and that appellant's lands did not need irrigation. This was also the theory of the case upon which the findings of the court were prepared, as shown by the findings themselves. Outside of the admissions in the answer, the testimony, while probably not as full and definite as it might be, sufficiently shows the threatened diversion of the water by the respondents. The witness stated it in his own homely language; but there can be no doubt about what he meant; and if his testimony as to the amount of water to be diverted were to be technically and strictly construed, we would have to conclude that the whole stream was to be diverted. So far as the materiality to appellant of the diversion is concerned, and the damages he would sustain by reason thereof, the testimony, it seems to us, is plain and emphatic, and being uncontradicted must prevail. The lease is put in evidence; also the purchase of the lands referred to in defendants' answer; also the deed of the right-

of-way referred to in defendant's answer, which recites that the water is to be diverted for water purposes at the town of Lowell, and this evidence considered in connection with the allegations of the answer leads irresistibly to the conclusion that the water was to be diverted, not for the benefit of the land, but for the purpose of furnishing water to the town of Lowell.

The only other question to be considered is, did the lease to appellant carry with it the right to the use of the water, not the right to the use of the bed of the stream of water, which seems to have been the pertinent question in the mind of the court, as indicated by finding number six, but the right to the use of the water itself? The general doctrine is thus laid down by 1 Taylor, Landlord and Tenant (8th ed.), § 212:

"A tenant is entitled to the use of all those privileges, easements, and appurtenances in any way belonging to the premises under lease, as incident to his grant, unless they have been expressly reserved, and excepted out of the lease."

And this is the doctrine of reason and of right, and in this instance the undisputed value of the water in Wood's creek no doubt entered largely into the calculations of both lessor and lessee in fixing the value of the leasehold interest in this land. It is true this lease is somewhat peculiar in its language, for, outside of the sixty-five acres, it leases all of the land that is now in cultivation or that is fit for pasture or grazing. At the most it could only be a question of fact as to how much of the described land passed by the lease, and could not affect the principle as applied to the land which *did* pass, as there were no easements reserved from the land which it passed. But the lease, construed as a whole, shows plainly that it was the intention to pass all the land that was not especially reserved, for there was a special reservation in this deed,

48—4 WASH.

namely one acre of high land, to be used for building pur-
poses, and the further right to clear and fence any of the
land hereinbefore described that is not at the present time
cleared or in grass.

But the right to the use of running water is recognized
as a higher right than an ordinary easement. "The right
to the use of the water in its natural flow is not a mere
easement or appurtenance, but is inseparably annexed to
the soil itself. . . . It is a natural right which arises
immediately with every new division or severance of owner-
ship." Gould on Waters (2d ed.), p. 396, and cases cited.

The case must be reversed, with instructions to overrule
the motion to dismiss. The costs of this appeal will be
allowed to appellant.

ANDERS, C. J., and STILES and SCOTT, JJ., concur.
HOYT, J., dissents.