[No. 6695.   Decided June 29, 1907.]

THE STATE OF WASHINGTON, *on the Relation of Kettle Falls Power and Irrigation Company, Plaintiff*, v. THE SUPERIOR COURT FOR STEVENS COUNTY, *Respondent.*[1]

EMINENT DOMAIN—PARTIES ENTITLED—IRRIGATION—PRIORITY. An irrigation company, which commenced its construction of a canal in January, 1905, had expended a large amount of money in construction work before the organization of another company in 1906, and in two years had expended $38,000 and was provided with ample means to complete the work, is shown to have been proceeding in good faith and diligently, and has a prior right to condemn waters of a stream which are not sufficient for both companies.

[1]Reported in 90 Pac. 650.

SAME—PROPERTY SUBJECT—RIPARIAN RIGHTS. The common law rights of riparian owners to the natural flow of waters of a non-navigable stream are subject to condemnation for irrigation purposes under Bal. Code, § 4143, except as to the water that is used or needed by himself for the purpose of irrigation, as provided in *Id.*, § 4156.

SAME—TRANSFER OF RIPARIAN RIGHTS—PRIORITY BETWEEN IRRIGATION COMPANIES. Where an irrigation company, prior in point of time, was already in good faith prosecuting its construction work for the use of the waters of a stream, another company acquiring riparian rights for the use of the same waters takes such rights subject to the right of condemnation existing against the riparian owners in favor of the prior company; since, as between two companies seeking to use the same waters, the one prior in time is prior in right, and the fact that the later company is a public carrier does not enlarge its riparian rights.

SAME — PRIORITY — NECESSITY OF PRIOR CONDEMNATION PROCEEDINGS. Where an irrigation company is openly and in good faith prosecuting the construction of its ditch for the use of the waters of a stream, it is not necessary that it should have previously condemned its water rights to give it priority over another company lower down on the stream subsequently seeking the use of the same waters.

SAME. Laws 1889-90, p. 718, § 42, providing that the appropriator of water rights seeking condemnation for irrigation purposes shall file a map of the location of its water ditch, etc., applies only to subd. 4 of the act relating to the "Right of Way for Ditches" of which it is a part; and upon a condemnation of water rights under subd. 5, entitled "On the Condemnation of Water Rights," it is not necessary to file any map of the location of the ditch, as the same is not required in the division of the law governing that matter.

SAME—PROCEEDINGS—REVIEW — CERTIORARI — NOTICE — WAIVER OF OBJECTION. In proceedings to condemn water rights for irrigation, one who was personally served, and appeared and contested the matter without objection to the notice, cannot claim, on certiorari, lack of jurisdiction by reason of failure to give the notice by publication required by the act of 1889-90, p. 719, § 45.

SAME—EXTENT OF CONDEMNATION—DAMAGES. Upon certiorari to review an adjudication of public use in a proceeding to condemn water rights for irrigation purposes, the respondent cannot urge error in that the decree declared condemnation of waters part of which had already been appropriated and which would reduce the damages; since that question belongs to the hearing upon the subject of damages.

Certiorari to review a judgment of the superior court for Stevens county, Carey, J., entered March 2, 1907, adjudging a public use etc., in an action to condemn the waters of a river for irrigation purposes. Affirmed.

*Voorhees & Voorhees*, and *Chas. V. Roberts*, for relator.

*W. C. Stayt* and *Gallagher & Thayer*, for respondent.

HADLEY, C. J.—A writ of review was issued by this court for the purpose of reviewing the judgment of the superior court in certain water-right condemnation proceedings. The petitioner for the condemnation, the Fruitland Irrigation Company, is a corporation, organized under the laws of South Dakota, for the purpose of engaging in the business of irrigation, and it is duly authorized to do business in this state. To effect the purposes of its organization, it is empowered to acquire by condemnation or otherwise waters and riparian rights. The Kettle Falls Power and Irrigation Company, a defendant in the proceeding, is a corporation organized under the laws of this state, with purposes and powers similar to those of the petitioning corporation. The petition alleges that the Colville river is a stream which flows through a portion of Stevens county, and empties into the Columbia river, passing in its course through certain described sections of land; that the petitioner has built an irrigation ditch for drawing off the waters of said river from a point described as the point of intake, which ditch extends in a westerly and southwesterly direction, through and into the sections of land described; that the construction of the ditch was commenced in January, 1905, and has been diligently prosecuted since that time; that it is now about seven miles long; that the petitioner intends to extend it further, and is now engaged in so doing.

It is further alleged that the petitioner intends to divert one hundred and sixty cubic feet of water per second of time from said stream into said ditch, and to conduct the same by

means of the ditch to lands lying further down the river; that it intends to furnish water for irrigating about sixteen thousand acres of land, which lie in a westerly and southwesterly direction from said point of intake; that the lands are arid or semi-arid in character, and are of small value without water with which to irrigate them, but they will become greatly enhanced in value when water can be supplied to them for that purpose; that the petitioner intends to furnish such supply by means of the diversion and ditch aforesaid, and to sell the water at reasonable rates to all persons owning lands adjoining the ditch.   It is alleged that the defendant corporation and its codefendant, J. W. Reynolds, are the owners of certain described lands through which the Colville river flows, and that they are the only persons interested in said lands as owners; that the volume of water in said river at the point of intake is between two hundred and three hundred cubic feet per second of time, and that when the petitioner has diverted the one hundred and sixty feet it intends to use, there will be that much less water flowing through the lands of defendants which lie below the point of intake; that the defendants claim that their riparian rights will be affected by reason of such diversion, and that their lands will be damaged thereby.   The petition concludes with the prayer that the use be declared a public one, and that the damages be ascertained.

The defendants jointly answered the petition with certain admissions and denials, and affirmatively alleged that the defendant corporation has been a corporation since the 22d day of October, 1906, and that it was created with power, among other things, to acquire and use for irrigation purposes lands, waters and water rights, and to generally engage in the business of a common carrier of water for irrigation purposes; that since its organization, it has been actively engaged in the prosecution of the object of its incorporation, it being the intention of said defendant to take water from said Colville river for the purpose of irrigating about sixteen thousand acres of land owned by many persons below the point of di-

version; that at the point of diversion of said waters there flows at the lowest stage of said river two hundred and ten cubic feet of water per second of time, and no more, and that all of said water will be necessary to irrigate said lands; that the Colville river is a nonnavigable stream, the abutting owners thereof having and owning riparian rights therein, and that below the point at which the defendant corporation intends to divert the water, there are on said stream a large number of riparian owners; that since its incorporation said defendant has by purchase acquired the riparian rights of said owners, together with lands necessary for the right of way for its canal or ditch; that the said defendant is devoting the waters, water rights, and riparian rights sought to be condemned by the petitioner to a public use, to wit, the irrigation of the lands for the public, and that such property and rights cannot be condemned for the same use by the petitioner.

Upon these issues a hearing was had, and the court found substantially as alleged in the petition, and also that the defendant corporation is the owner of riparian rights as alleged in the answer. It was especially found that the petitioner has already expended more than $38,000 in the work of constructing its said ditch, and in preparing to divert the waters into the same; that the contemplated use and diversion of said one hundred and sixty cubic feet of water per second of time is a public use, and that there is no other practicable source from which the petitioner can obtain the necessary water for the irrigation of the lands mentioned. It was also found that the river is a nonnavigable one, and that the defendant corporation's land and water rights below the point of the petitioner's intake will be injuriously affected by the diversion of the one hundred and sixty feet of water into petitioner's ditch. It was found that the defendant corporation needs four and one-tenth cubic feet of water per second of time with which to irrigate its own lands below the point of petitioner's intake, which amount is not subject to the right of eminent domain;

that the defendant corporation has not commenced the construction of its irrigating canal or ditch by survey or otherwise, and has not performed any acts which entitle it to the rights of a public service corporation as against the rights which have accrued to the petitioner in respect to the condemnation of said waters.    The decree condemns one hundred and sixty cubic feet of water as against the defendants, subject to their prior right to the use of four and one-tenth cubic feet as aforesaid, and the defendant corporation as relator has applied to this court for the review of the judgment.

It will be observed from the statement of the case, that the controversy arises from the fact that two corporations seek to use the water of the Colville river for the irrigation of the same territory.    The evidence is extensive, and it would be impracticable to discuss it in detail here.    We have, however, read the entire record of the evidence, and we find that the findings of the court are in essential particulars supported by the testimony.    The respondent company had expended a large amount of money in its construction work before the relator company was even organized and before the latter had acquired its riparian rights upon said river.    We are satisfied that the respondent was at all times proceeding in good faith with its irrigation scheme, and that it was reasonably active in pushing its construction work in view of the extent of the project.    This is shown by the large amount of money it has expended upon construction, and the evidence shows that it is amply provided with funds for proceeding to the completion of the work.    There is not water enough in the river to supply both companies.    Both cannot occupy the same territory for the same purpose, and one must therefore yield to the other.

The relator's argument is that it is a public service corporation, organized to carry water as an irrigation company; that it owns the riparian rights sought to be condemned, and that it cannot be divested of these rights through condemnation by another irrigation company.    If the relator is considered as a riparian proprietor only, its rights must be limited to

those of an ordinary riparian owner, viz., to a necessary amount of water for the irrigation of its own abutting lands. Under Bal. Code, § 4156 (P. C. § 5871), the ordinary abutting owner must submit to the condemnation of his riparian rights to the natural flow of the water as at common law, with the limitation, however, that water "that is used by said person himself for irrigation, or that is needed for that purpose by any such person" may not be condemned. Does the mere fact that relator is a public carrier of water enlarge its ordinary riparian rights and entitle it to divert all the water and carry it to distant lands, as against everyone else? If it possesses such enlarged right, it is not due merely to its riparian ownership, but rather to the fact that by its acts as a public service corporation it is in position to claim such use of the waters. If it were first in point of time in the development of its irrigation scheme, it would probably have the right to so divert the waters if no other riparian owners were concerned. But since another irrigation company was in good faith prosecuting its construction work when the relator acquired its riparian rights, we think the latter possesses no greater rights as against such company than those of any ordinary riparian owner. As a carrier it must therefore yield to the respondent company which was prior in point of time. *Samish River Boom Co. v. Union Boom Co.*, 32 Wash. 586, 73 Pac. 670.

In the above-cited case two boom companies sought the same location. This court said that both could not carry on their corporate business at the same place at the same time, and quoted with approval from Mills on Eminent Domain (2d ed.), § 47, as follows:

"When different corporations desire the same location, the one that is prior in point of time is also prior in point of right, and the first location, if followed by construction, operates to secure the prior right."

The above-stated rule appeals to the reasonable mind as eminently right and just. We think the fact that respondent had not commenced proceedings to condemn these riparian rights before they were acquired by the relator should not

defeat its right to now condemn them in view of all the facts. Had the individual riparian holders who transferred their rights to the relator continued to hold them, the right to condemn against them would undoubtedly have existed in favor of respondent. When relator acquired these rights, respondent was openly and in good faith occupying the vicinity with its construction work. It was not necessary that it should have previously condemned its water rights. It has been held that a landowner cannot defeat proceedings to condemn a right of way for an irrigation ditch on the ground that the condemner has not yet acquired any water rights from riparian owners of the stream it proposes to tap. *Prescott Irrigation Co. v. Flathers*, 20 Wash. 454, 55 Pac. 635. By the same reasoning, an irrigation company that is alone and in good faith constructing a canal or ditch is not required to forthwith condemn its water rights. It cannot accomplish all at one time. We therefore think that, under all the circumstances surrounding the relator's acquisition of these riparian rights, it acquired them subject to the right of condemnation which existed in favor of respondent at the time the relator acquired them.

The relator argues that, as the river is a nonnavigable stream, the waters are not subject to condemnation, but that the common law right to the natural flow of water must be preserved to the riparian owner. In support of this argument, the case of *Benton v. Johncox*, 17 Wash. 277, 49 Pac. 495, 61 Am. St. 912, 39 L. R. A. 107, is cited. That case deals with questions concerning the prior appropriation of water, based merely upon the doctrine of priority of use and possession without regard to compensation to the riparian owner. The case does not deal with the right to condemn private ownership in riparian rights where full compensation is made. The right to so condemn is fully declared by our statute, Bal. Code, § 4143 (P. C. § 5858), in the following words: "Any person, association, or corporation, desiring to condemn the riparian rights of persons in any natural stream or lake in this state, may do so as follows." The method of effecting

condemnation is set forth in the remainder of the section, and in succeeding ones, and in § 4156, hereinbefore cited, the limitation upon the extent to which condemnation may go is declared as we have seen.

It is further contended by the relator that respondent cannot condemn the water rights it seeks because of its failure to comply with certain preliminaries required by statute. The provisions upon this subject may be found in the Laws of 1889-90, at page 718 of said volume. Section 42 provides that every person or corporation constructing or enlarging any ditch and taking water directly from any natural stream or lake, shall, within ninety days after the construction, file in the office of the county clerk of the county in which the head gate of such ditch may be situated, a map showing the point of location of such head gate, the route of such ditch, and other matters specified. Following the specifications for the map and its accompanying statement, are the following words: "If such statement be filed within the time above limited, priority of right of way and water accordingly shall date from the day named as the day of commencing work. Otherwise, only from the date of the filing of the same." The relator contends that the respondent filed no such map or statement within ninety days after construction, it contending that the ninety-day period began to run with the commencement of construction. Respondent, upon the other hand, insists that the time begins with the completion of construction, which time has not yet arrived. It also insists that it has filed the map, but the relator disputes the sufficiency of the map to support the extent of the condemnation sought.

We believe it is unnecessary to discuss the respective contentions concerning the time of filing and the sufficiency of the map, for the reason that we think no map was required as a preliminary to the institution of this particular condemnation proceeding. By referring to the act of 1889-90 upon this subject, at page 706 *et seq.*, it will be observed that it is subdivided into eight divisions. Division 4 at page 715

treats of "Right of Way for Ditches." In this division is found § 42 above mentioned, which provides for the filing of a map. Not only is the stated subject of the subdivision that of right of way for ditches, but the section itself deals in terms with that subject alone. It seems to follow that, when condemnation of right of way for an irrigating ditch or canal is sought, a map must be filed in accordance with said section. This is a proceeding, however, to condemn water or riparian rights and not a right of way for a ditch. Subdivision 5 of the act aforesaid is designated as follows: "On the Condemnation of Water Rights." The method for condemning such rights is confined exclusively to subdivision 5, and includes §§ 44 to 54 inclusive of the act. This proceeding must be governed by the procedure there outlined. There is there no requirement for the filing of a map, and it follows that none was necessary.

Relator calls attention to the following words in § 42 and within the subdivision relating to right of way for ditches, to wit: "Priority of right of way and water accordingly shall date," etc. Inasmuch as the word "water" is coupled with the words "right of way," it is argued that the map requirement must relate also to the procedure for condemnation of water rights. We think not. As we have seen, both the subdivision and the section in all other respects treat of the one subject of right of way for ditches, and the use of the words "priority of right of way and water" must rather refer to the prior right to occupy the way and conduct water thereon. If the map requirement had been intended in connection with the condemnation of riparian or water rights, it would have been specified as a part of the procedure on that subject. The legislature doubtless saw a good reason why a preliminary map was necessary to designate the route of a right of way for a ditch, and it may have seen an equally good reason why it is not necessary to designate the location of riparian rights which may be known by reference to the course of the stream itself.

It is further contended by the relator that the court condemned too great an amount of water. This contention is based upon the claim that a preliminary map was necessary, and that a map which was filed by respondent did not indicate sufficient extent of contemplated construction to use the amount of water which was condemned. We have seen that the map was not necessary, and the proofs amply show that the amount of water condemned is not too much for the use of the sixteen thousand acres of land which the evidence also shows is the amount to be served by respondent's system as partially constructed, and as it is to be when completed.

The relator urges that the court was without jurisdiction to hear this matter, for the reason that notice was not given in accordance with § 45 of the act of 1890 heretofore cited. The provision calls for notice to all persons concerned, to be published in some paper, etc. Section 44 calls for the filing of a petition as the initiatory step. By the petition the court acquired jurisdiction of the subject-matter, and the relator as a party concerned appeared generally and answered, and in open court agreed that the cause should be tried, all without objection for want of notice. The objection cannot be made at this time. 15 Cyc. 844.

The question discussed by respondent with reference to its contention that it had already appropriated a part of the waters of the Colville river before it brought this proceeding, we think is not before us. The proceeding is one to condemn riparian rights. The decree is in favor of respondent, and declares what is condemned. If respondent can now show a prior ownership in a part of these waters by way of reduction of damages, that question belongs to the hearing upon that subject. We do not now decide that such showing can be made, and we decline to express any views upon the subject.

The judgment is affirmed.

FULLERTON, MOUNT, ROOT, CROW, DUNBAR, and RUDKIN, JJ., concur.