[No. 22831. Department One. May 15, 1931.]

*In the Matter of the Determination of the Rights to the Use of the Waters of* SINLAHEKIN CREEK.[1]

[1] Reported in 299 Pac. 649.

*Crollard & O'Connor,* for appellants Forde *et al.*

*Wilson C. Gresham,* for appellants Conner *et al.*

*Williamson & LaBerge,* for appellants Ellis *et al.*

*The Attorney General* and *John C. Hurspool, Assistant,* for respondent State of Washington.

*Fred J. Cunningham,* for respondent Whitestone Reclamation District.

*Weaver & Weaver,* for respondent Spokane & Eastern Trust Co.

*Chas. A. Johnson,* for respondent Black Bear Ditch.

PARKER, J.—The claimants and appellants, Forde, Ellis, Conner, and Kinchelo, seek in this court reversal of a decree of the superior court for Okanogan county adjudicating their respective water rights in Sinlahekin creek, in that county. The decree was rendered in a proceeding prosecuted in that court by the state supervisor of hydraulics, as provided by our water code, Rem. Comp. Stat., §§ 7351 *et seq.,* and adjudicated all of the numerous claims of water rights in Sinlahekin creek and its tributaries in that county. None of the other claimants has appealed from the decree.

Sinlahekin creek rises in the mountains in the northerly portion of Okanogan county, flows easterly through a narrow non-agricultural canyon or valley for a distance of some ten miles to a point near Blue lake, and thence northerly through the lands of appellants and other lands, in a valley of some agricultural possibilities, which is more or less settled, for a distance of some twelve miles into Palmer lake. Sinlahekin creek has no tributary of importance flowing into it above the lands of appellants, other than the short outlet of Blue lake, though it has one or two tributaries carrying considerable quantity of water flowing into it some distance below the lands of appellants.

The trial court decreed, applicable to all riparian claimants, as follows:

"That the riparian lands formerly in Indian Allotments have failed in the successful use of water for irrigation, have not used the water within a reasonable time and will not within a reasonable time utilize the water of said stream for irrigation; that the claimants herein have generally elected to present their respective claims on the basis of rights by appropriation; that the evidence submitted by claimants who have not so elected is insufficient in every instance to establish rights by reason of riparian ownership;"

and, after classifying the lands of all of the claimants in classes 1 to 20, inclusive, and decreeing priority of rights accordingly, decreed generally as follows:

"That the duty of water fixed by the referee in his report herein, to-wit: One (1) second foot of water for each sixty (60) acres of land, be and the same hereby is fixed as the duty of water covering the rights to the water of Sinlahekin creek and its tributaries."

The water was apportioned to the several land areas accordingly, subject to priorities according to the decreed classes. The controversy upon this appeal is between appellants on one side; and the reclamation district, claimant for non-riparian lands, and the Black Bear Ditch, claimant for non-riparian lands, on the other side; appellants claiming rights superior to those rights.

The Whitestone reclamation district is a duly organized irrigation district under the laws of this state. Its ultimate purpose has been and is to reclaim some 10,-000 acres of arid land lying over a low divide to the east of Sinlahekin valley, that is, lands not riparian to Sinlahekin creek, and, for that purpose, to divert the water from that creek, its tributaries and other sources. The reclamation district has already so reclaimed some 2,200 acres of arid lands so situated.

In May, 1910, a predecessor in interest of the reclamation district made appropriation claim, by due notice and record thereof as provided by our statutes then in force, of 200 second feet of the water of Sinlahekin creek, to be diverted therefrom at a point near Blue lake. Improvements looking to the diversion of the water at that point were promptly commenced and diligently carried to completion, consisting of the damming of the short outlet of Blue lake, which flowed into Sinlahekin creek, and diverting the water of the creek into the lake, making it a storage reservoir, and construction of a canal therefrom northerly for a distance of some ten miles along the higher ground of the eastern edge of the valley and over the low divide to the east, to the lands sought to be reclaimed.

The lands of the reclamation district were decreed to be in class 15, and it was accordingly awarded right in the waters of Sinlahekin creek to the extent of 200 cubic feet per second for 10,000 acres of land, qualified as follows:

"This right includes 32 cu. ft. per second for direct diversion for the Sinlahekin canal. The remainder, or 168 cu. ft. per second, is for filling the Blue lake reservoir to the extent of 7400 acre feet each year, and can be diverted between October 1st and April 15th the following year without respect to other rights, but from April 15th to October 1st of each year only the quantity over and above that required to fill the rights herein decreed from Sinlahekin creek may be diverted for storage."

The land of appellant Forde lies along the creek below the Blue lake diversion point of the reclamation district. His land was granted by government patent as an Indian allotment in October, 1910, and thereafter acquired by him through mesne conveyances. The decree awards to Forde water for sixty acres of his land in class 15, and for one hundred and ten acres of his

land in class 20, each with a water right according to the general terms of the decree above noticed. Forde's land has never been irrigated to the extent of more than twenty-five acres thereof; nor was any irrigation ever attempted thereon until long after the initiation of the appropriation right now held by the reclamation district.

The land of appellant Ellis lies along the creek below the Blue lake diversion point of the reclamation district. His land was granted by government patent as an Indian allotment in February, 1924, and thereafter acquired by him through mesne conveyances. The decree awards to Ellis water for one hundred and twenty-four acres of his land in class 20, with a water right according to the general terms of the decree above noticed. His land has never been irrigated to the extent of more than thirty acres thereof; nor was any irrigation ever attempted thereon until long after the initiation of the appropriation right now held by the reclamation district.

The land of appellant Conner lies along the creek below the Blue lake diversion point of the reclamation district. His land was granted by government patent as an Indian allotment in August, 1924, and thereafter acquired by him through mesne conveyances. The decree awards to Conner water for one hundred and ten acres of his land in class 20, with a water right according to the general terms of the decree above noticed. His land has never been irrigated to the extent of more than thirty-five acres thereof; nor was any irrigation ever attempted thereon until long after the initiation of the appropriation right now held by the reclamation district.

The land of appellant Kinchela lies along the creek below the Blue lake diversion point of the reclamation district. His land was granted by government patent

on a date that is not by this record made certain, but, manifestly, it was long after the initiation of the appropriation right now held by the reclamation district. The decree awards to Kinchela water for forty acres of his land in class 20, with a water right according to the general terms of the decree above noticed. No part of his land has ever been irrigated.

While each appellant has separately appealed, and, by his counsel, has filed a separate brief in support of his contentions, it is contended alike in behalf of each of them, in substance, that, because of his land being riparian to the creek, his riparian rights in the waters of the creek remain wholly unimpaired and determinable as to the extent of such right as at common law; regardless of the water necessities of his land, regardless of his whole or partial failure to use the water upon his land or his prospective use of water upon his land, and regardless of the appropriation of a portion of the water by the predecessor in interest of the reclamation district and of the actual use of the water in pursuance of that appropriation.

If appellants' rights in the waters of the creek flowing through their respective lands were determinable by the rules of the common law, apart from the modification of those rules, as applicable to the arid land conditions prevailing in this state, by our decisions rendered in harmony with the decisions of the courts generally in the western arid land states, and apart from Federal statutory authority permitting appropriation of waters upon public lands according to local state laws, it may be conceded that these contentions would be sustainable. But common law riparian rights in this state are not of the unqualified nature contended for by counsel for appellants. It is true that some of the early decisions of this court, rendered at a time

when the necessities of conserving and putting to beneficial use the waters of the state were not so fully realized as in later years, seem to lend some support to these contentions.

In *Brown v. Chase,* 125 Wash. 542, 217 Pac. 23, the extent of, and limitation upon, the water rights of riparian land owners with reference to their riparian lands, was reviewed at length, and we were there led to announce this conclusion:

"In consonance with the general needs and welfare of the state, especially in the arid and semi-arid regions, and in harmony with the legislation upon the matter, we are now prepared to declare, instead of the mere loose and general expressions in some of our opinions, that (1) waters of non-navigable streams in excess of the amount which can be beneficially used, either directly or prospectively, within a reasonable time, on, or in connection with riparian lands, are subject to appropriation for use on non-riparian lands."

This view of the law was adhered to in our decisions in *Proctor v. Sim,* 134 Wash. 606, 236 Pac. 114; *State v. American Fruit Growers,* 135 Wash. 156, 237 Pac. 498, and *Hunter Land Co. v. Laugenour,* 140 Wash. 558, 250 Pac. 41.

It is contended in behalf of appellants that the decreeing

". . . that the riparian lands, formerly in Indian allotments, have failed in the successful use of water for irrigation, have not used the water within a reasonable time and will not within a reasonable time utilize the water of said stream for irrigation,"

is not supported by the evidence.

This seems to us not wholly correct as a finding of no water being used by appellants Forde, Ellis, and Conner at the time of the trial, but we think it does have substantial support in the evidence in so far as it,

in effect, finds that the waters of the creek were not, within a reasonable time, utilized by appellants, and will not, within a reasonable time, be utilized by them in excess of their present actual use; so that in no event would the appropriation rights of the reclamation district and the Black Bear Ditch claimants be impaired by appellants' riparian rights, other than to the extent of each of their present use of the waters of the creek upon their respective lands.

The appropriation right now held by the reclamation district to the water of the creek through or near Blue lake was, as we have already seen, initiated long prior to the issuance of any of the government patents for the lands now owned by appellants. These patents were grants from the United States, the owner of the land in its proprietary capacity, and hence conveyed to the grantees title thereto subject to such restrictions upon the riparian rights attending the lands of appellants as the Federal statutes at that time provided. Sections 2339 and 2340, Revised Statutes of the United States, in force at all times since long prior to the issuing of these patents, now § 661 of Title 43, U. S. C., p. 394, reads in part as follows:

"Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested rights shall be maintained and protected in the same; . . .

"All patents granted, or preemption or homesteads allowed, shall be subject to any vested and accrued water rights, or rights to ditches and reservoirs used in connection with such water rights, as may have been acquired under or recognized by this section."

In our decision in *In re Waters of Doan Creek,* 125 Wash. 14, 215 Pac. 343, in recognition of this statu-

tory appropriation right which can be acquired under this Federal statute and become superior to a subsequent grant by the United States, we said:

"We have recognized the right of prior appropriation of water as against lands belonging to the public domain, until segregated from the public domain, and that such prior appropriation, once established, is superior to riparian rights and subsequent appropriations;"

citing our prior decisions. This is recognized to be the law in our later decisions in *In re Alpowa Creek,* 129 Wash. 9, 224 Pac. 29, and *Hunter Land Co. v. Laugenour,* 140 Wash. 558, 250 Pac. 41. Thus, it seems plain that the appropriation right now held by the reclamation district, which was initiated prior to the government patent grants of all the lands of appellants, and has at all times been diligently protected by appropriate improvements and actual use of the water so appropriated, is a right superior to the rights of appellants. The rights of the Black Bear Ditch claimants are sustainable as superior to the claims of appellants, upon facts in substance the same as those upon which we sustain the superiority of the claims of the reclamation district.

No complaint is made in behalf of appellants of the awarding to the reclamation district the additional 168 cubic feet·per second from its storage of water in the Blue lake reservoir, since that is water accumulated during the non-irrigation season, and does not affect the water necessities of appellants during the irrigation season. In other words, it is water which they will not have occasion to use. We are not concerned here with any of the awards made to other claimants, since appellants are not objecting thereto.

We think the decree has worked as nearly exact justice as it is possible under the much involved, and, in

many particulars, not in this record clearly proven, facts. The supervisor, as referee of the superior court, personally viewed all of the lands of all claimants. His report and findings were approved by the decree of that court. As advised by this record, we conclude that the decree should be in all respects affirmed. It is so ordered.

MITCHELL, HOLCOMB, and MAIN, JJ., concur.

TOLMAN, C. J. (dissenting)—The majority quotes from the opinion in *Brown v. Chase*, 125 Wash. 542, 217 Pac. 23, as follows:

"In consonance with the general needs and welfare of the state, especially in the arid and semi-arid regions, and in harmony with the legislation upon the matter, we are now prepared to declare, instead of the mere loose and general expressions in some of our opinions, that (1) waters of non-navigable streams in excess of the amount which can be beneficially used, either directly or prospectively, within a reasonable time, on, or in connection with riparian lands, are subject to appropriation for use on non-riparian lands."

I accept this statement as being a fair interpretation of the law, except only the words, "within a reasonable time," as now construed by the majority. In my judgment, riparian rights are not governed by the law of user, and can not be lost by mere non-user. So far as the judgment appealed from is sustainable upon the theory that water can not be beneficially used either now or in the future upon the riparian lands, I concur; but I can not, as now advised, lend my assent to the principle that mere non-user, of itself, is a forfeiture of the natural riparian rights created and provided by nature. Those necessarily inhere in and adhere to the land for all time, and one owning the riparian land may use or not at his pleasure. The water which nature has

made applicable to riparian lands can, in logic, no more be removed from those lands than can the soil itself.

I therefore dissent.