[No. 50825–9. En Banc. January 11, 1985.]

THE DEPARTMENT OF ECOLOGY, *Appellant,* v. MARK
A. ABBOTT, ET AL, *Respondents.*

*Kenneth O. Eikenberry, Attorney General, Charles B. Roe, Jr., Senior Assistant,* and *Wick Dufford* and *Charles K. Douthwaite, Assistants,* for appellant.

*Herman & Herman,* by *J. Steve Jolley,* for respondents Riddle, et al.

UTTER, J.—Water resource allocation concerns everyone in our state. Its common use for household consumption, agriculture, manufacturing and hydroelectric power makes water a highly coveted resource. While of concern to all, those most acutely affected by developments in our water law live in the more arid portions of our state east of the Cascade Range. The two cases before this court today concern land east of the Cascades and involve the status of riparian rights in Washington water law. *See Department of Ecology v. Adsit,* 103 Wn.2d 698, 694 P.2d 1065 (1985). In this case, the State appeals from a trial court ruling reversing a referee's determination at a 1982 stream adjudication and issuing a partial summary judgment declaring a riparian's common law rights to water undiminished by the 1917 water code. We reverse the trial judge and hold that the 1917 water code established prior appropriation as the dominant water law in Washington. After 1917, new water rights may be acquired only through compliance with the permit system and existing water rights not put to beneficial use are relinquished. The permit system, modified over time to require a permit for all water put to beneficial use, allows the State to efficiently implement the state water policy, most recently articulated by the Legislature in 1979:

It is the policy of the state to promote the use of the public waters in a fashion which provides for obtaining maximum net benefits arising from both diversionary uses of the state's public waters and the retention of waters within streams and lakes in sufficient quantity and quality to protect instream and natural values and rights.

RCW 90.03.005.

I

In the early 1900's, John Fuher began operating a sawmill on the banks of Deadman Creek on property now owned by Riddle, the respondent in this appeal. The sawmill diverted water from the creek for log washing. In 1921, Fuher moved the sawmill to the opposite bank of the creek and continued to divert water. At that time, he also constructed a small pond which was continuously filled with fresh water. The sawmill continued in operation until the mid–1940's, at about which time respondents acquired the land. In August 1911, after the sawmill was already operating, Fuher filed a notice of appropriation with the Spokane County Auditor declaring his intent to divert 4.0 cubic feet per second (c.f.s.) of water for irrigation and other beneficial uses.

Sixty years later, on September 24, 1971, J. C. Riddle filed water right claim 5924, claiming the right to divert and use 4.0 c.f.s. of the waters of Deadman Creek for irrigation of 200 acres. Although the water has been used for irrigation for at least the last 15 to 20 years, the referee in a 1982 adjudication denied Riddle's claim of a water right of that quantity acquired from Fuher and confirmed a water right of a much smaller amount. The referee indicated that Fuher irrigated only about 15 acres in either 1922 or 1923. Except for the sawmill, there was no evidence of continuous use between the early 1920's and the early 1950's. The trial court, relying on Riddle's status as a riparian, granted Riddle partial summary judgment and remanded to the referee.

In reversing the referee, the trial judge declared that a

riparian owner's common law rights to "ordinary" and "natural" (domestic) uses of water were unaffected by either the 1917 water code or the 1969 water rights act. He concluded that the right to "ordinary" and "natural" uses inheres in the ownership of the property and is neither acquired through actual usage nor lost through disuse. He also concluded that the 1917 code did not require unexercised riparian rights to be exercised within any particular time from the June 6, 1917 effective date, nor did it require changes in "ordinary" and "natural" use to be approved by the State.

## II

Riparian rights, where they exist, derive from the ownership of land contiguous to or traversed by a watercourse. *Crook v. Hewitt*, 4 Wash. 749, 749–50, 31 P. 28 (1892) ("the law is uniformly settled that every proprietor of lands on the bank of a river has naturally an equal right to the use of the water which flows in the stream adjacent to his lands, as it was wont to run, without diminution or alteration"). Riparian rights in Washington can be traced to an enactment of the territorial Legislature adopting the common law of England as the rule of decision in territorial courts. *See* Laws of 1862, p. 82, ch. 1; *see also Benton v. Johncox*, 17 Wash. 277, 280–81, 49 P. 495 (1897).

The Washington Constitution did not mention riparian rights. As to water rights, it provides in article 21, section 1 that the "use of the waters of this state for irrigation, mining and manufacturing purposes shall be deemed a public use." No specific guaranty of the vitality of the riparian rights doctrine appeared in either the 1890 or the 1891 implementing legislation. Provision for condemnation of riparian rights in the 1890 act, however, makes clear that riparian rights continued to exist. *See* Laws of 1889, ch. 21, p. 722, § 57. The implementing statute passed in 1891 provided:

> The right to the use of water in any lake, pond or flowing spring in this state, or the right to the use of water flowing in any river, stream or ravine of this state

for irrigation, mining or manufacturing purposes, or for supplying cities, towns or villages with water, or for water works, may be acquired by appropriation, and as between appropriations the first in time is the first in right.

Laws of 1891, ch. 142, § 1, p. 327. Section 9 of the act read:

Water appropriated for any of the purposes in this act mentioned may be changed to any other purpose herein specified or to any other beneficial use, and the right to such use shall relate back to the original appropriation.

The 1891 act also stated that "this act shall not be construed to interfere with vested rights." Laws of 1891, ch. 142, § 7, p. 328.

Appropriative rights, as provided for by statute, and riparian rights, derived from the common law, existed simultaneously. Conflict between riparian and appropriative rights was addressed as early as the first volume of Washington Reports. *Geddis v. Parrish,* 1 Wash. 587, 21 P. 314 (1889). The "California" or dual system of riparian and appropriative rights was fully recognized in our state in *Benton v. Johncox, supra.* There, the court recognized riparian ownership as superior to subsequent appropriation. *Benton,* at 288. It further decided that riparian rights date to the inception of title by the government patentee and noted the common law rule "that every riparian proprietor has an equal right to the use of water as it is accustomed to flow, without diminution or alteration, is subject to the well recognized limitation that each owner may make a reasonable use of the water for domestic, agricultural and manufacturing purposes . . .". *Benton,* at 290.

Under the common law, mere disuse of riparian rights did not destroy or suspend their existence. *Rigney v. Tacoma Light & Water Co.,* 9 Wash. 576, 38 P. 147 (1894); *Lux v. Haggin,* 69 Cal. 255, 391, 10 P. 674 (1886). The perpetuity of the right, however, was subject to impairment or destruction through adverse use by others or creation of an estoppel against the riparian proprietor. 2 W. Hutchins, *Water Rights Laws in the Nineteen Western States* 25 (1974).

Strict application of the riparian rights doctrine led to problems. The riparian rights doctrine prevented appropriative or riparian development by others, even if the riparian rights had never been exercised. As population density increased, demand for water grew and the vitality of the riparian doctrine began to wane. *See* Trelease, *Coordination of Riparian and Appropriative Rights to the Use of Water,* 33 Tex. L. Rev. 24, 25–26 (1954). In 1907, the Supreme Court upheld the 1890 statute which provided that riparian rights may be condemned for irrigation purposes, subject to the irrigation needs of the riparian. *State ex rel. Kettle Falls Power & Irrig. Co. v. Superior Court,* 46 Wash. 500, 90 P. 650 (1907). The condemnation statute was again at issue later that year. The court discussed the meaning and intention of the phrase "needed for [irrigation] by any [riparian]":

> We think it means the water necessary to irrigate the land of the littoral or riparian owner which he now has under irrigation, and also that which he intends to, and will, place under irrigation *within a reasonable time.* It cannot be supposed that the legislature intended that a riparian owner could prevent an irrigating company from appropriating water not then in use but which the riparian owner might need and use upon his land at some distant, indefinite time in the future. Such a construction would be in the interest of the speculator rather than for the encouragement of the land improver and home builder. . . . If [the riparian] is not using the water and does not propose to use it as soon as practicable in the ordinary and reasonable development or cultivation of his lands, then there is no reason why the water should be withheld from others who need and will promptly use it if permitted.

(Italics ours.) *State ex rel. Liberty Lk. Irrig. Co. v. Superior Court,* 47 Wash. 310, 313–14, 91 P. 968 (1907).

Erosion of riparian rights as the dominant force in Washington water law continued with the enactment of the water code of 1917. Until 1917, there existed two ways for a nonriparian owner to obtain an appropriative right to water: by taking water from the public domain and putting

it to beneficial use, *Thorpe v. Tenem Ditch Co.,* 1 Wash. 566, 20 P. 588 (1889), or by posting a statutory notice at the point of diversion and commencing construction of the works. Laws of 1891, ch. 142, § 2, p. 327. The 1917 code abrogated the acts of 1890 and 1891 and provided for a new system of application, permit and certification by the supervisor of hydraulics (now the supervisor of water resources).

■ The water code of 1917 declares that, subject to existing rights, "*all* waters within the state belong to the public, and any right thereto . . . shall be hereafter acquired . . . in the manner provided and not otherwise . . .". (Italics ours.) RCW 90.03.010. "Any person . . . desiring to appropriate water for a beneficial use shall [apply] to the supervisor of water resources for a permit . . . and shall not use or divert such waters until he has received a permit . . .". RCW 90.03.250. No exception is made for waters devoted to "ordinary", "natural" or domestic uses. There is no indication that rights which vested before the water code were to be excluded from general water rights adjudications or otherwise treated differently. For example, RCW 90.03.120 calls for service in an adjudication of "all known persons claiming the right to divert the water involved . . .". No distinction is made as to the kind of use.

Nothing in the 1917 water code "shall be construed to lessen, enlarge, or modify the *existing* rights of any riparian owner, or any existing right acquired by appropriation, or otherwise." (Italics ours.) RCW 90.03.010. The code also continued and enlarged condemnation rights by giving any person the power to condemn an inferior use for a superior beneficial use. RCW 90.03.040. Shortly after adoption of the code, the Supreme Court held that a riparian owner *intending* future use could not prevent condemnation by a nonriparian owner for an *immediate* use for power. *State ex rel. South Fork Log Driving Co. v. Superior Court,* 102 Wash. 460, 470, 173 P. 192 (1918) (the test for condemnation is "the extent and manner of the proposed use as com-

pared with the present use"). Finally, the 1917 water code required that a change in use of all pre–code vested rights must be approved by the supervisor of hydraulics. RCW 90.03.380.

The trial judge in this case, despite the shift away from the primacy of riparian rights by the courts and Legislature, concluded that the appropriative permit system embodied in the 1917 water code applied only to *surplus* waters in excess of those required for "ordinary" or "natural" domestic uses by riparians. He also interpreted the forfeiture provisions of the water rights act as applying only to public uses enumerated in article 1, section 16 of the state constitution. Although we need not decide questions concerning that here, even partial adoption of the trial court opinion would effectively create a domestic use exemption from the permit system and state management of water resources. The Legislature did expressly create a domestic exemption in the groundwater code, RCW 90.44-.050, but it has never seen fit to create such an exemption for surface water.

We cannot agree with the trial court's conclusion. The trial judge relied on two decisions subsequent to the 1917 water code in concluding that domestic uses did not fall within the purview of the code. Yet, we believe neither of those cases reached that question. *Brown v. Chase,* 125 Wash. 542, 217 P. 23 (1923) and *Proctor v. Sim,* 134 Wash. 606, 236 P. 114 (1925) were both concerned with determining whether the clause in the 1917 code protecting the "existing rights" of riparian owners, *see* RCW 90.03.010, applied to unused rights.

Whether unused riparian rights survived adoption of the use–oriented 1917 water code has been much discussed. *See* Horowitz, *Riparian and Appropriation Rights to the Use of Water in Washington,* 7 Wash. L. Rev. 197 (1932); Morris, *Washington Water Rights—A Sketch,* 31 Wash. L. Rev. 243 (1956); Johnson, *Riparian and Public Rights to Lakes and Streams,* 35 Wash. L. Rev. 580 (1960); Corker & Roe, *Washington's New Water Rights Law—Improvements*

*Needed,* 44 Wash. L. Rev. 85 (1968). The referee in this case determined that the "[e]xtent of the right is limited to the amount of water developed and used under diligent pursuance and completion of any project as originally contemplated and which was initiated within three years after the effective date of the 1917 Surface Water Code. (June 6, 1917)". Report of Referee, at 15.

*Brown v. Chase, supra,* presented a contest between riparians whose rights were unexercised and an applicant for an appropriation permit under the 1917 water code. The trial court overturned a permit on the grounds that a riparian owner is entitled to "the undiminished unpolluted flow of the stream past his land." In reversing the trial court, the Supreme Court adopted the approach taken in *Kettle Falls Power,* and stated:

> [I]n consonance with the general needs and welfare of the state, especially in the arid and semi–arid regions, and in harmony with the legislation upon the matter, we are now prepared to declare . . . that (1) waters of non–navigable streams in excess of the amount which can be beneficially used, either directly or prospectively, *within a reasonable time,* on, or in connection with riparian lands, are subject to appropriation for use on non–riparian lands.

(Italics ours.) 125 Wash. at 553, 217 P. at 26–27.

*Proctor v. Sim, supra,* involved a situation similar to that in *Brown v. Chase, supra.* The riparian rights concerned derived from ownership of land bordering a nonnavigable lake. The court reasoned, "[i]t would seem a waste of energy to compel the surplus waters of a stream to labor on arid lands and at the same time permit surplus waters of a lake to lie idle." *Proctor,* 134 Wash. at 619. Read in isolation, attempting to support preferential treatment for domestic use, one might conclude that a substantive difference in the nature of "surplus" waters actually exists. However, review of the opinion shows that the term "surplus" refers to those waters not already put to use by the riparian. The court determined that the "existing rights" which the water code protected referred to "the right to the bene-

ficial use of such portions of the waters . . . as are either directly or prospectively, within a reasonable time, proper and necessary for the irrigation of their lands and for the usual domestic purposes." *Proctor v. Sim, supra* at 615–16.

*Brown v. Chase, supra,* and *Proctor v. Sim, supra,* are not surprising decisions when viewed in light of the movement toward use–oriented rights. In a dual system, nonuse of *any* riparian rights results in their forfeiture. J. Sax, *Water Law, Planning and Policy* 287 (1968); *see State v. American Fruit Growers, Inc.,* 135 Wash. 156, 237 P. 498 (1925). On the other hand, *Brown v. Chase, supra,* and *Proctor v. Sim, supra,* both imply that the code did not extinguish unused water rights as of 1917 but as of a later date, adequate to allow riparian owners to learn about the code and take steps to protect their interests. Many commentators, and several courts, have determined that either the statute or the decisional law of this court has eliminated unused riparian rights. Disagreement, however, is widespread as to when that relinquishment occurred. *See* Corker & Roe, 44 Wash. L. Rev. at 114–18; *see also* 2 W. Hutchins, *Water Rights Laws in the Nineteen Western States* 14 (1974). The time when relinquishment occurred must be settled to decide today's case.

Six years after *Proctor v. Sim, supra,* was decided, four members of Department One of this court agreed that a claim to riparian rights which had not and would not be exercised "within a reasonable time" was properly rejected by a trial court reviewing an adjudication. *In re Sinlahekin Creek,* 162 Wash. 635, 299 P. 649 (1931). Because *Sinlahekin Creek* and the other cases applying the "reasonable time" standard are all forward looking, the Department of Ecology suggests 1932 as the date by which unused riparian rights must have been put to use or forfeited. Our cases support adoption of that year as the cutoff date for exercise of unused riparian rights; 15 years after enactment of the water code, we now hold, as a matter of law, constitutes adequate notice.

The referee's denial of Riddle's claim based on Fuher's

riparian status was proper.[1] No rights sought were exercised for irrigation purposes prior to 1917. Fuher lost his claim to these unexercised riparian rights by 1932 and therefore transferred only those exercised to Riddle.

 Respondents assert that the sawmill use through the 1940's, along with their predecessor's irrigation use, supports retention of a right based on Fuher's beneficial use. Generally, an appropriator is not limited to the use for which the appropriation was initially made. *See In re Alpowa Creek,* 129 Wash. 9, 224 P. 29 (1924).

Since 1917, however, by statute changes in use must first be approved by the supervisor of water resources. In this case, a change in use from log washing to irrigation should be allowed only if an application to do so was filed with and approved by the supervisor of water resources. Neither Fuher nor Riddle appears to have sought approval for the change in use.

### III

Riddle asserts that the forfeiture of riparian rights for nonuse effects an unconstitutional taking. In Washington, we have previously held that the permit requirement for bringing a water right into existence in the first instance is a reasonable exercise of the State's police power. *Peterson v. Department of Ecology,* 92 Wn.2d 306, 596 P.2d 285 (1979). In other states, it is well established that riparian rights may be extinguished or limited by statute. 2 W. Hutchins, at 290–97. That a state has the power to either modify or reject the doctrine of riparian rights because

---

[1]As to a water right by prior appropriation, based on Fuher's August 1911 Notice of Water Right, the finder of fact must determine whether the irrigation appropriation was actually completed with due diligence. *See Sander v. Bull,* 76 Wash. 1, 4, 135 P. 489 (1913) ("[a]ppropriation of water consists in an intention to appropriate followed by reasonable diligence in applying the water to a beneficial use"). A notice filed under the 1891 law is only a statement of intention and not proof that what was intended was, in fact, done. *See* Laws of 1891, ch. 142, § 3, p. 328. Here, at least 50 years were taken to perfect the right from the time of posting to its present level of use. The referee thus limited the right acquired to the number of acres shown to have been irrigated by the early 1920's (and to a rate of withdrawal commensurate with such usage).

unsuited to the conditions in the state and to put into effect the doctrine of prior appropriation has long been settled. *See, e.g., Baumann v. Smrha,* 145 F. Supp. 617, 624 (D. Kan.), *aff'd,* 352 U.S. 863 (1956); *In re Water Rights of Hood River,* 114 Or. 112, 227 P. 1065 (1924).

Neither the Legislature nor our courts have gone so far as to eliminate riparian rights, as other states have. Consumptive, recreational and aesthetic riparian rights are considered to be vested property rights. *Department of Ecology v. Acquavella,* 100 Wn.2d 651, 674 P.2d 160 (1983); *Bach v. Sarich,* 74 Wn.2d 575, 445 P.2d 648 (1968); *In re Clinton Water Dist.,* 36 Wn.2d 284, 218 P.2d 309 (1950). They may not be taken by inverse condemnation or by zoning. *See, e.g., Bach v. Sarich, supra.* Riparian rights may be limited, however, in order to further state policy encouraging beneficial use. *See, e.g., State ex rel. South Fork Log Driving Co. v. Superior Court, supra.*

Washington is not the only state which provides for the forfeiture of unused riparian rights. The State of Texas also allows termination of riparian rights for nonuse through exercise of the police power. *In re Adjudication of Water Rights,* 642 S.W.2d 438, 444–46 (Tex. 1982). In addition, several states allow termination of groundwater rights for nonuse without requiring compensation. *Chino Vly. v. Prescott,* 131 Ariz. 78, 84, 638 P.2d 1324, 1329 (1981); *Williams v. Wichita,* 190 Kan. 317, 340–41, 374 P.2d 578, 595–96 (1962), *appeal dismissed,* 375 U.S. 7, 11 L. Ed. 2d 38, 84 S. Ct. 46 (1963); *Baeth v. Hoisveen,* 157 N.W.2d 728, 733 (N.D. 1968); *Knight v. Grimes,* 80 S.D. 517, 523–27, 127 N.W.2d 708, 711–14 (1964).

■ There has been no unconstitutional taking. The steady and gradual evolution toward prior appropriation by the court and the Legislature in the early days of statehood, culminating in the 1917 water code and the cases following from it, constituted sufficient notice and opportunity for exercise of unused riparian rights so that no compensable taking occurred by the reversion of unused riparian rights to the State.

## IV

The Department of Ecology asserts the trial judge misunderstood the purpose of statutory minimum instream flow. The Department and the trial judge appear to disagree whether nondiversionary stock watering rights may be determined in an adjudication. Case law supports the conclusion that stock watering rights may properly be determined in an adjudication. *See, e.g., In re Stranger Creek,* 77 Wn.2d 649, 466 P.2d 508 (1970).

## V

The summary judgment of the trial court is reversed and remanded in light of the determinations above. The Riddles' request for attorney's fees is denied.

WILLIAMS, C.J., BRACHTENBACH, DOLLIVER, DORE, DIM-MICK, PEARSON, and ANDERSEN, JJ., and CUNNINGHAM, J. Pro Tem., concur.