[No. 14047.   Department Two.   October 13, 1917.]

PLEASANT VALLEY IRRIGATION & POWER COMPANY,
*Respondent*, v. EDWIN BARKER *et al.*,
*Appellants.*[1]

WATERS AND WATER COURSES — PURCHASE — USE OF CHANNEL — RIGHTS OF RIPARIAN OWNERS. Riparian owners who quitclaimed all the waters of a stream are not entitled to stored waters belonging to the plaintiff which plaintiff caused to flow down the channel without exceeding high water mark; in view of Rem. Code, § 6337, which provides that any person may take any water which he may have a right to use along any of the natural streams of the state, not raising the same above high-water mark; and such use of streams as highways is not inconsistent with the riparian ownership of the bed of a nonnavigable stream, where no damage is done to the channel.

Appeal from a judgment of the superior court for Okanogan county, Pendergast, J., entered February 14, 1916, in favor of the plaintiff, in an action for equitable relief, tried to the court. Affirmed.

*Smith & Gresham*, for appellants.

*Chas. A. Johnson*, for respondent.

[1]Reported in 167 Pac. 1092.

PARKER, J.—This is an action wherein the plaintiff, Pleasant Valley Irrigation & Power Company, seeks a decree adjudging it entitled to the use of the water flowing in Tallent creek over the land of the defendants, Edwin Barker and wife, in Okanogan county; and also adjudging it entitled to cause the portion of the water accumulated by them from other sources to continue to flow in the channel of Tallent creek over defendants' land. Trial in the superior court for Okanogan county resulted in a decree as prayed for by the plaintiff, excepting that there was thereby reserved to the defendants the right to use the water of Beck spring for domestic purposes, which spring is upon their land, the water therefrom flowing, if not consumed, into Tallent creek. From this disposition of the cause, the defendants have appealed to this court.

The claim of appellants is rested upon the theory of riparian ownership, in so far as their right to the use of the water is concerned. The trial court seems to have been of the opinion that this claim must fail because they do not have good title to the land they claim ownership in as riparian to the creek, although the court adjudged them to have the right to the use of the water in Beck spring. This, however, was conceded by respondent. This view of the trial court we gather from a somewhat lengthy opinion filed by it in disposing of appellants' motion for a new trial. The view of the trial court as to appellants' rights, assuming that they have good title to the land, is not disclosed by the record. However, since counsel for respondent practically concede that appellants have good title to the land, we have read the evidence with care to the end that we may determine the respective rights of the parties, proceeding upon the theory that appellants have good title to the land.

We think the following is a fair summary of the controlling facts as disclosed by the evidence: Tallent creek flows from Leader lake over appellants' land. The creek naturally carries a very small quantity of water in the dry season of the

year when water is needed for irrigation, though it carries a considerable quantity at other times of the year when there is no particular use for the water. The creek has well-defined, relatively high and perpendicular banks, confining the water within narrow limits, even when the water is at its highest stage, where it passes over appellants' land. In the dry season of the year, when water is needed for irrigation, there is only sufficient water naturally flowing in the creek to irrigate a very small quantity of land, not exceeding at most four or five acres. In July, 1911, appellants owned not only the land here in question, but also other land upon the creek a short distance below, and we think that the evidence shows appellants were then using, during the irrigating season, upon the land below, practically all of the water which naturally flowed in the creek. They then quitclaimed to respondent all the water being so used by them, thus in effect quitclaiming to respondent all the water then naturally flowing in the creek. Respondent has acquired and brought from other sources into Leader lake, out of which Tallent creek flows, a considerable quantity of water, where it is stored for the purpose of irrigating lands lying below appellants' land. In the dry season of the year, when water is needed for irrigating the lands of that arid region, respondent causes the water in the lake, including its stored water therein, to flow through the natural channel of Tallent creek to the irrigated lands it serves, which are below appellants' land. The water so caused to flow in Tallent creek never exceeds in quantity at any one time the natural flow of that creek in times of ordinary high water, and never overflows the well-defined banks, through appellants' land. In other words, respondent so uses the natural channel of the creek as a way for conveying its stored water to the lands it serves.

It is conceded that the appellants have no right to the use of any of the water brought to and stored by respondent in Leader lake and flowing through the channel of Tallent creek. It seems to us that a statement of the facts as above

summarized is a sufficient answer to appellants' contentions touching their right to the use of any of the waters flowing in Tallent creek, other than their use of the water of Beck spring, it being conceded that they are not entitled to any of the stored waters which respondent has brought into Leader lake, and it appearing that they have quitclaimed their right to the water which flows in the creek, apart from respondent's stored water.

It is contended in appellants' behalf that, since Tallent creek is a nonnavigable stream and they being the owners of the bed thereof where it passes over their land, respondent has no right to cause its stored waters to flow in the channel of the creek over their land and thereby, in effect, use the channel of the creek as a way for such water without acquiring such right by eminent domain proceedings, which it has not done. The answer to this contention seems to be found in § 6337, Rem. Code, reading in part as follows:

"Any person may take any water which he may have a right to use along any of the natural streams or lakes of this state, but not so as to raise the waters thereof above ordinary high-water mark."

This is a statutory recognition of the natural streams of the state as highways for the purposes of conveying water therein, open to the free use of all persons for the conveying of any water, so long as such use does not "raise the waters thereof above ordinary high-water mark." In other words, the streams of the state are highways for the flow of water therein to the extent that nature has made them such. This permitted use of the channel of Tallent creek we think has not been exceeded by respondent, and we may add that we think the evidence shows this use by respondent causes no damage to the channel of the creek through appellants' land, by erosion or otherwise. This limited use of the natural streams of the state as ways for the flow of water other than what naturally flows therein, it seems to us, is not inconsistent with the ownership of the bed of the stream by the owner

of adjoining riparian lands. Our decision in *Miller v. Wheeler*, 54 Wash. 429, 103 Pac. 641, 23 L. R. A. (N. S.) 1065, in effect so holds, though that case had more to do with the use of the stored water than with the right to have it flow in the natural stream, through which it was being conveyed.

The judgment is affirmed.

ELLIS, C. J., MOUNT, HOLCOMB, and FULLERTON, JJ., concur.