[No. 17514.  Department One.  February 3, 1923.]

GRANT ELGIN et al., Appellants, v. C. E. WEATHERSTONE et al., Respondents.[1]

WATERS (58-63)—APPROPRIATION—FUGITIVE OR FOREIGN WATERS—FIRST TAKER. Surplus or foreign waters, originating from another watershed and added to a stream by seepage and percolation through artificial means, are vagrant or fugitive, and subject to appropriation by the first taker, but the fact that one was the first taker for several years, less than the period required for prescription, does not give him the exclusive right to take such as might thereafter flow, as against an upper owner, who has the first opportunity to take the future flow.

SAME (63)—APPROPRIATION—DECREE. A decree is not uncertain in determining the amount of fugitive water added to a creek by seepage, where it found that it was twice the amount taken, and that the right to take should cease if the seepage should in the future cease.

Appeal from a judgment of the superior court for Okanogan county, Neal, J., entered February 17, 1920, upon findings in favor of the defendants, in an action to enjoin the diversion of the waters of a creek, tried to the court. Affirmed.

P. D. Smith, for appellants.

Johnson & O'Connor, for respondents.

BRIDGES, J.—By this action the appellants seek to enjoin respondents from taking any waters from a certain creek for domestic uses and for irrigation of their land.

The appellants have not taken any exceptions to the findings of fact made by the trial court, which are in substance as follows: The plaintiffs now are, and for many years have been, the owners of certain lands in Okanogan county, Washington, through which Elgin

[1]Reported in 212 Pac. 562.

Canyon creek flows. In 1908, the defendants acquired by homestead certain other lands located a short distance farther up the same creek, and thereafter, having complied with the homestead law, acquired title from the government. In 1918, the defendants commenced the installation of a hydraulic ram and pipe line, for the purpose of taking water from the creek for domestic use and irrigation. It is this action that the appellants seek to enjoin. The plaintiffs and their predecessors in interest, for more than ten years prior to 1908, being the time of the inception of defendants' rights in their land, had appropriated all the natural flow of water in the creek in question and used the same for domestic purposes and for the necessary irrigation of their lands. "Prior to the year 1910," the findings recite

"an irrigation project and system was constructed by the United States government, covering the land on both sides of said stream (Elgin Canyon Creek) to within a short distance of its junction with the Okanogan river (into which Elgin Canyon Creek empties) and including all of the other watershed draining into said stream; that said irrigation system has been in use and operation continuously every year since and including the year 1910, and that virtually all of the lands in such watershed have been placed under irrigation from foreign water carried down from Salmon Creek watershed by artificial means, and that by reason of said irrigation system and the irrigation of the lands constituting the watershed to the said Elgin Canyon Creek, the waters thereof have been augmented and increased by seepage and percolation into said creek, on and above defendants' land, to an amount at least twice equal to the water which the defendant had attempted to appropriate therefrom through said hydraulic ram and pipe line to his premises, and of the agreed capacity of 2.2 gallons per minute."

. The court further found that

"Defendant has no right to any of the natural flow of said stream, for the reason that the plaintiff had appropriated and used all thereof for useful purposes long prior to the inception of defendant's right to the lands described in his pleadings and riparian to said creek. Therefore it follows that the defendant must be restricted in his use of the water in the aforesaid creek to the increased flow thereof by reason of foreign water carried to the watershed of said creek, and distributed over the surface thereof and thence by seepage and percolation finding their way into and increasing the flow in said creek to the amount aforesaid."

It was further found that, if at any time such increased flow should cease, then defendant's rights would cease. From these findings the court concluded that the plaintiffs are the owners of the first right to divert the natural flow of the stream, and that the defendants have the right to appropriate from the creek an amount of water equal to the full capacity of their hydraulic ram, not to exceed 2.2 gallons per minute, provided such rights shall cease when the increase of flowage as above indicated shall cease. A decree was entered in accordance with these findings, and plaintiffs have appealed.

. It will be noticed that the waters causing the increased flow come from another watershed altogether and are what may be termed foreign waters. The controversy here concerns only these surplus waters. The single proposition contended for by appellants is stated in their briefs to be: "that if the flow of the creek was increased by the irrigation of adjacent lands from water originating in a foreign watershed, the increase belonged to the first appropriator, in that they were abandoned waters and became the property of the first taker."

It seems to be well settled by such authorities as there are on the subject that such character of foreign waters are of a vagrant or fugitive nature and they may be used by the first person who can take them from the stream where they are found. In the case of *Clemens Horst Co. v. New Blue Point Min. Co.,* 177 Cal. 637, 171 Pac. 417, this question was elaborately discussed. In that case the court put the question as follows:

"Where the flow of the stream is augmented by artificial means, that is, by waters which, without the interference of human agency would never reach the stream, does this artificial flow inure to the benefit of the riparian owners, or is it merely in the nature of abandoned personalty which may be appropriated by the first person who can take it from the stream."

In answering this question, the court said:

"So in the present case it may be said that as the surplus waters would not in the course of nature reach appellant's land, that corporation may not complain of being deprived thereof either by the producers of the excess, by their assignees, or by a stranger to their title who appropriated the abandoned excess for proper purposes. . . . We are convinced that plaintiff and respondents were upon an equal footing with reference to the surplus water, and that the ones who first secured it may not be deprived of the right to the use of it, even outside of the watershed of Wolf creek by the person or corporation claiming as a lower riparian proprietor on Bear river."

In the case of *Stepp v. Williams,* 52 Cal. App. 237, 198 Pac. 661, speaking of the same character of water, the court said:

"These waste waters were of a vagrant or fugitive character, and, while, so long as they remained so or were not controlled by the owner of the ditch from which they escaped they were subject to appropriation and use by others, a usufruct could not be acquired therein."

Adopting the doctrine of these cases, we hold that the surplus waters in Elgin Canyon creek are vagrant, waste waters coming from another watershed, and do not become a part of the natural waters of the creek, even after they have entered it, and that since such waters do not belong to any person, the first taker has the prior right. To a certain extent, this court has recognized this doctrine in the following cases: *Mason v. Yearwood*, 58 Wash. 276, 108 Pac. 608, 30 L. R. A. (N. S.) 1158; *Nesalhous v. Walker*, 45 Wash. 621, 88 Pac. 1032; *Miller v. Wheeler*, 54 Wash. 429, 103 Pac. 641, 23 L. R. A. (N. S.) 1065.

But, as we understand the argument, appellants claim that they come within the rule of the above cited cases because they have been using these surplus waters for several years (but less than the period required for prescription) before the respondent commenced using them or any water from the creek, and are therefore the first takers. They were, of course, the first takers of such as they used, but that did not give them the exclusive right to take such as might thereafter flow. The fact that they took them last year does not give them a right to take them this year. The parties are on equal terms as to any future flow. The vagrant waters of yesterday are not those of to-day. The respondents are the upper owners and these waters must first flow through their lands, and therefore they have the first opportunity to take them, and cannot be deprived of that right simply because other vagrant waters have previously been taken by appellants as they passed by their lands.

It is further contended that the court erred in failing to find and determine the amount of water carried by the creek prior to the increase because of such seepage, and that the decree is uncertain and indefinite. We do not so think. The court expressly found that these

seepage waters were twice the amount the respondents were attempting to take, and further determined that, if such waters should in the future cease, then respondents' rights to take would cease. This, it seems to us, makes the decree certain.

We do not decide whether there can be a prescriptive right in foreign waters such as those we have been discussing, because that question is not before us.

The judgment is affirmed.

PARKER, MACKINTOSH, HOLCOMB, and MITCHELL, JJ., concur.