[No. 49509-2. En Banc. June 28, 1984.]

EUGENE C. JENSEN, *Appellant,* v. THE DEPARTMENT OF ECOLOGY, ET AL, *Respondents.*

*Ralph J. Rodamaker,* for appellant.

*Kenneth O. Eikenberry, Attorney General, Charles B. Roe, Jr., Senior Assistant,* and *Wick Dufford, Assistant,* for respondent State.

*F. Henry Habicht II, Acting Assistant Attorney General, Gene S. Anderson, United States Attorney, Charles Pinnell, Assistant,* and *Dirk D. Snel* and *Blake A. Watson, Department of Justice Attorneys (William Dunlop,* of counsel), for respondent Bureau of Reclamation.

*John W. Baird, Richard A. Lemargie,* and *Allen D.*

*Brecke,* for respondents Quincy–Columbia Basin Irrigation District, et al.

WILLIAMS, C.J.—Appellant Jensen's application for a permit to withdraw public groundwaters was denied by the Department of Ecology (DOE) on March 20, 1981. He appealed to the Pollution Control Hearings Board (PCHB) which, following a formal hearing, affirmed the DOE decision. He then appealed to the Superior Court for King County which affirmed the PCHB. RCW 43.21B.190 provides for direct review by this court. We affirm.

The issues raised are (1) whether there was error in the DOE's denial of the permit based on the determination that no public groundwater was available for appropriation, and (2) whether procedural errors occurred in the DOE's processing and denial of the application which warrant remand or reversal.

In 1968, appellant purchased property in the Quincy basin, an area in Eastern Washington. Since 1952, large portions of that area have been irrigated with waters made available by the Grand Coulee Dam as part of the Columbia Basin Project. As a result of percolation of imported irrigation water, the naturally occurring groundwater table has been substantially augmented. Appellant's property did not receive project irrigation water, but is located in an area where the groundwater table has been increased. On February 28, 1974, he filed an application with the DOE for a permit to withdraw public groundwater.[1] At that time, the DOE had tentatively determined that all public groundwater had been fully appropriated. He was told that his application would be held for priority purposes only. There

---

[1]Groundwaters are those waters that exist beneath the land surface or beneath the bed of any body of water. Groundwater which exists wholly due to natural processes is "natural ground water", and water which is made available in underground storage, including water incident to irrigation, is "artificially stored ground water". *See* RCW 90.44.035. All natural groundwaters within the state and artificial groundwaters that have been abandoned or forfeited are public groundwaters and subject to appropriation. RCW 90.44.040.

were 186 other applicants who preceded him in priority. In 1975, appellant filed an application to withdraw artificially stored groundwater. The permit, issued soon afterward, requires applicants to enter into an agreement with the United States Bureau of Reclamation (Bureau) to pay for withdrawn water. While Jensen noted on his application that he did not recognize the Bureau's claim of ownership of the water, he did enter into the required agreement. Appellant then requested the DOE to process his 1974 application for public groundwater. The DOE denied his application on April 3, 1980, basing the denial on its determination that all public groundwater had been fully appropriated, and that further withdrawal would impair existing rights.

Among the existing rights considered by the DOE are those of the Bureau. The Bureau's ownership of artificially stored water was recognized by the DOE pursuant to RCW 90.44.130. In 1973, the DOE established the Quincy groundwater subarea in compliance with its duty to administer and control groundwater withdrawals as will safely sustain water yields. RCW 90.44.130. Within a prescribed period following the designation of a groundwater subarea, claimants to ownership of artificially stored groundwater must file a declaration of ownership. Within the period in 1973, the Bureau filed such a declaration, claiming all water which had percolated into underground storage as a result of project irrigation. On January 8, 1975, the DOE recognized the Bureau's claim by Docket No. 74–772.

I

CLAIMED ERRORS OF LAW

■ Applications for permits to withdraw groundwater are governed by RCW 90.03.250 through 90.03.340, which regulate surface water appropriation. RCW 90.44.060. Under those provisions, DOE must reject the application and refuse to issue a permit if there is no unappropriated water available, if withdrawal will conflict with existing

rights, or if withdrawal will detrimentally affect public interest. RCW 90.03.290. *Stempel v. Department of Water Resources,* 82 Wn.2d 109, 508 P.2d 166 (1973). The DOE's decision is an exercise of discretion. *Peterson v. Department of Ecology,* 92 Wn.2d 306, 314, 596 P.2d 285 (1979). We will not set aside a discretionary decision absent a clear showing of abuse. *Schuh v. Department of Ecology,* 100 Wn.2d 180, 667 P.2d 64 (1983). Review of administrative decisions is based on the record of the administrative tribunal, and its factual determinations will be affirmed unless clearly erroneous. *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 325, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106, 74 L. Ed. 2d 954, 103 S. Ct. 730 (1983).

Appellant disputes as an error of law the PCHB finding of fact that groundwater beneath his land "is composed of both naturally occurring (public) groundwater and imported (artificial) water which have been commingled". PCHB 80–96, Final Findings of Fact, Conclusions of Law, at 4. He argues that the artificial groundwater should be included in the DOE's quantification of public groundwater, because it is, in law, public groundwater. The theories he offers are these: (1) the Bureau did not timely claim its ownership; (2) the Bureau abandoned the water; (3) commingling with public water causes artificially stored water to become public water; and (4) the Bureau's claimed water is limited to a horizontal depth above the area from which his well draws. When errors of law are alleged the reviewing court may substitute its judgment for that of the administrative body; however, the court will accord substantial weight to the agency's view of the law. *Sellers,* at 325.

Appellant argues that his rights to the artificially stored groundwater he is withdrawing vested before the Bureau's rights, because his 1974 application preceded the DOE's 1975 recognition of the Bureau's ownership. Appellant is mistaken in several regards. First, with certain exceptions not applicable here, a permit is required for withdrawal of public groundwater. *Peterson v. Department of Ecology, supra.* Appellant's right to withdraw public

groundwater never arose because he was never granted a permit. Had a permit been granted, his right of withdrawal would relate back to the date of his application. RCW 90.03.340. A permit not having been granted, his sole right was to his place in line. *Schuh v. Department of Ecology, supra.* Second, although a declaration of ownership and an application to withdraw are not really analogous, we note that the Bureau's 1973 declaration preceded appellant's 1974 application. Third, the DOE's acceptance of the Bureau's declaration was a recognition of the Bureau's pre-existing rights in conformance with RCW 90.44.130. Contrary to appellant's assertions, the Bureau was not under an obligation to claim its ownership until such time as the DOE designated the groundwater subarea. RCW 90.44.130. Unless abandoned or forfeited, artificially stored ground-water is not public water. *See* RCW 90.44.040.

Appellant argues, however, that the Bureau's water was either abandoned, or else that it lost its identity by virtue of its commingling with naturally occurring groundwater. In either case, appellant concludes, the water has become public groundwater available for appropriation.

In 1923, the United States Supreme Court was confronted with arguments similar to Jensen's, specifically whether the United States had a right to recapture and utilize seepage from irrigation waters in the Shoshone Project in Wyoming. *Quoting United States v. Haga,* 276 F. 41 (D. Idaho 1921), the Court said,

"One who by the expenditure of money and labor diverts appropriable water from a stream, and thus makes it available for fruitful purposes, is entitled to its exclusive control so long as he is able and willing to apply it to beneficial uses, and such right extends to what is commonly known as wastage from surface run–off and deep percolation, necessarily incident to practical irrigation. Considerations of both public policy and natural justice strongly support such a rule. Nor is it essential to his control that the appropriator maintain continuous actual possession of such water. So long as he does not abandon it or forfeit it by failure to use, he may assert

his rights. It is not necessary that he confine it upon his own land or convey it in an artificial conduit. It is requisite, of course, that he be able to identify it; but, subject to that limitation, he may conduct it through natural channels and may even *commingle it or suffer it to commingle with other waters.* In short, the rights of an appropriator in these respects are not affected by the fact that the water has once been used."

*Ide v. United States,* 263 U.S. 497, 506, 68 L. Ed. 407, 44 S. Ct. 182 (1924).

 The test for determining whether water has been abandoned was enunciated in *Miller v. Wheeler,* 54 Wash. 429, 103 P. 641 (1909). There the court said:

[A]bandonment like appropriation is a question of intent, and to be determined with reference to the conduct of the parties. The intent to abandon and an actual relinquishment must concur, for courts will not lightly decree an abandonment of a property so valuable as that of water in an irrigated region.

(Citation omitted.) *Miller,* at 435. Appellant offered no evidence that the Bureau intended or in fact relinquished control of its water. In contrast, the PCHB found that the Bureau intended from the inception of the Columbia Basin Project to recapture waters from the northern portions of the project for use in the southern portions. PCHB 80–96, Final Findings of Fact, Conclusions of Law, at 3. There is ample support in the record for this finding. For example, there was testimony that O'Sullivan Dam was constructed to seal off migrating water at the Potholes Reservoir, and that both natural and artificial systems are employed to control and channel the seepage waters. *See, e.g.,* PCHB 80–96, Transcript of Proceedings, vol. 1, at 36. Absent any showing of either intent or actual abandonment, we shall not decree the Bureau's waters to be public water by virtue of abandonment.

 Appellant's argument that the artificially stored groundwater has commingled with naturally occurring groundwater, and has thus lost its identity and become public groundwater is without support in either case law or

statute. The court in *Miller* found that the mingling of waters from separate sources did not cause a loss of identity, as water is distinguishable and measurable by quantity. Later, this court said that foreign waters which increased the volume of natural streams do not become part of the natural stream by virtue of entry therein. *Elgin v. Weatherstone,* 123 Wash. 429, 212 P. 562 (1923). Also, the *natural* waterways of the state may be used for the conveyance of stored water. *Pleasant Vly. Irrig. & Power Co. v. Barker,* 98 Wash. 459, 167 P. 1092 (1917); RCW 90.03.030. Nothing in the statutory scheme suggests that commingling causes artificially stored water to lose its identity.

Appellant also contends that the DOE's recognition of the Bureau's artificially stored water was limited to a horizontal depth, and that since his well is below that depth, he is withdrawing public groundwater.[2] The PCHB found that water withdrawn at the depth of appellant's well would have been public groundwater prior to the importation of project water, but since the project's inception, and the consequent increase in the water table it is not possible to distinguish water other than by volume. As water is measured by volume, and as the DOE found that public groundwater is fully appropriated by volume, Jensen is withdrawing Bureau water. PCHB 80–96, Final Findings of Fact, Conclusions of Law, at 7. This conclusion is in accord with *Miller* and *Elgin.*

Finally, appellant claims that the DOE is estopped from

---

[2]The language on which Jensen relies is: "This acceptance . . . relates only to portions of ground waters . . . that extend from land surface to the altitude of the water level as shown on a map of the water table of the Quincy basin area . . ." Department of Ecology Order 74–772, at 10 (Jan. 8, 1975). The PCHB explained that the reference to altitude is to an observed physical occurrence, showing the increase in the water table. Also, this sentence follows a quantification by volume of the Bureau's stored water. We agree that the language in its proper context fixes project water by volume, and not by physical demarcation.

denying him a permit because the DOE does not have sufficient facts to know whether public groundwater is fully appropriated. He points to footnote 1 in *Peterson v. Department of Ecology*, 92 Wn.2d 306, 315, 596 P.2d 285 (1979), which indicates that the State, in that case, believed that sufficient data was not available to act on the respondent's application.[3] In *Peterson*, the DOE had not made an initial determination regarding availability of appropriable groundwater, and we held that availability of public groundwater was not a proper issue in Peterson's appeal of a cease and desist order. *Peterson*, at 313. Here, the DOE did determine that no public groundwater was available.

## II
### CLAIMED PROCEDURAL ERRORS

Appellant claims he was denied due process and equal protection by the DOE's failure to follow the provisions of RCW 90.03.110 through RCW 90.03.240. Those provisions do not apply to the processing of permit applications. Instead, RCW 90.44.060 directs applications for permits and rights of withdrawal to be governed by RCW 90.03.250 through RCW 90.03.340. The sections cited by appellant are applicable to determinations regarding existing rights, not permit applications. Appellant did not have an existing right to appropriate public groundwater.

Appellant apparently relies on *Orchard Grove Water Ass'n v. King Cy. Boundary Review Bd.*, 24 Wn. App. 116, 600 P.2d 616 (1979) as support for his argument that he was deprived of equal protection, but he does not state any factual or legal basis as to how this opinion applies to his

---

[3]While the opinion does not so state, the DOE in its brief here, and the briefs submitted in *Peterson* disclose that the body of groundwater of concern in *Peterson* was in the Deep Management Unit in the Quincy subarea, while Jensen's well withdraws from the Shallow Management Unit. *See* former WAC 173–134–020. Whatever storage area the water is drawn from is immaterial, because *Peterson* can be distinguished otherwise.

situation. *Orchard Grove* states that like treatment for persons within a class is required, and reasonable grounds for distinguishing between those without the class. He is not within the same class as the Bureau because he is not a recognized declarant of ownership of artificially stored water. His treatment is different from other applicants only in that his permit has been acted upon at his own insistence. The record indicates that if other applicants request processing of their applications, they too would be denied permits.

The DOE was required by former WAC 173–134–110 to send copies of WAC 173–134 and 173–136 to persons described therein, which description included appellant. These regulations were issued on January 8, 1975, concurrently with DOE's acceptance of the Bureau's declaration. The DOE did not mail the WAC regulations to him. Appellant asserts that these regulations were in effect decisions on his public groundwater application, and that he was deprived of notice. The purpose of WAC 173–134 was "to set forth rules of the department of ecology for the administration of all ground waters, including, among others, commingled public ground waters and artificially stored ground waters, within [the Quincy] subarea . . ." WAC 173–134–010. The purpose of WAC 173–136 is "to establish a permit system as a part of a comprehensive state water management and regulatory control program pertaining to the withdrawal and use of ground waters consisting of commingled artificially stored ground waters and public waters . . ." WAC 173–136–010. Neither chapter in any sense denies appellant's public groundwater application.

 Before a person may be deprived of property rights, due process requires notice reasonably calculated to apprise interested parties of the pendency of an action which might deprive them of rights. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652 (1950). Appellant cites this case, but fails to specify what deprivation of right he would be in danger of suffering by not receiving copies of the two WAC regulations. It is pos-

sible that he believes that he was unable to contest the DOE's acceptance of the Bureau's declaration because without the WAC's he did not know of the acceptance. Appellant applied for artificially stored water 1 month and a day after the filing of the WAC regulations. On that 1975 application he acknowledged the Bureau's ownership, albeit with an objection. Therefore, while he did not receive notice of the Bureau's accepted declaration through receipt of the WAC regulations, he somehow acquired notice, and was not actually prejudiced.

Appellant claims prejudice because at the time the regulations were published he had documentation which proved that he had originally applied for a permit in 1969. The PCHB found persuasive evidence that no earlier application had been filed with the DOE. PCHB 80–96, Final Findings of Fact, Conclusions of Law, at 5. Our examination of the record does not contradict this finding. Even if we were to conclude that appellant filed an application in 1969, he has failed to make clear how a receipt of the two sets of regulations would have any bearing. As neither WAC regulation deprived appellant of any rights he would otherwise have, we cannot conclude that he was deprived of a notice which would result in a denial of due process.

Appellant's additional arguments concerning the failure to apply the provisions of the Family Farm Water Act, RCW 90.66, laches, prescription, and adverse possession are without support.

## CONCLUSION

The PCHB found by clear and persuasive evidence that public groundwater in the Quincy subarea was fully appropriated before appellant applied for a permit to appropriate public groundwater. A division by volume of artificially stored and naturally occurring groundwater is supported by law and statute. Neither clearly erroneous findings of fact nor errors of law were made by the PCHB in its review of the DOE's denial of appellant's application. The alleged procedural errors were either unsupported, or were imma-

120

terial and did not result in prejudice. The findings and conclusions of the PCHB are therefore affirmed.

ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., concur.