[No. 7237–1–III.   Division Three.   December 2, 1986.]

JERRY DODGE, *Appellant*, v. ELLENSBURG WATER COMPANY, *Respondent*.

*F. Steven Lathrop*, for appellant.

*Robert L. Fraser* and *Cone, Fraser, Gilreath & Korte*, for

respondent.

McINTURFF, A.C.J.—S. Gerald Dodge appeals the Superior Court's denial of his request for a permanent injunction to enjoin Ellensburg Water Company (EWC) from diverting all the water of Cooke Creek. We affirm.

Mr. Dodge owns farmland which abuts Cooke Creek in Kittitas County. He diverts water from the Cooke Creek channel to irrigate a portion of this land. Upstream from his property, Cooke Creek is crossed by three canals, viz., the North Branch Highline (Highline), Cascade Irrigation District (Cascade) and Town Ditch (Town) canals. The latter canal is owned by the defendant, EWC.

Cooke Creek has no tributaries above where the Highline canal crosses it. Its only natural source of water is melting snowpack. The Highline canal (constructed in 1933) brings water from a different watershed into the Cooke Creek drainage area and irrigates land lying between it and the Cascade canal, which is situated downstream from the Highline.

Cascade Irrigation District owns the Cascade canal, which it built in 1904. Like the Highline, Cascade's waters are from a different watershed than that of the creek. Cascade diverts the water from the Cooke Creek channel by installing boards across the downstream side of the channel during the irrigation season from April 1 to October 31. It irrigates land between its canal and the Town canal which lies approximately 1.5 miles downstream.

EWC was formed in 1885, and its Town canal has intersected Cooke Creek since approximately 1889. The Town canal also brings in water from a different watershed for irrigation and also diverts the water from the Cooke Creek channel.

As a basis for Mr. Dodge's suit to enjoin EWC from diverting all of the creek waters, he claimed that EWC had no right to the channel water. In the alternative, he maintained he was vested with superior rights based upon (1) his prescriptive use of the channel water which he alleged

EWC routinely released downstream prior to 1977, (2) an 1882 notice of water right filed by his predecessor in interest, J. D. Olmstead, and (3) a 1905 agreement between EWC and the United States Bureau of Reclamation which limited EWC's use of the water to a certain rate.[1]

The court rejected Mr. Dodge's claims and concluded he had no right to an injunction. Mr. Dodge's appeal assigns error to several of the court's findings and conclusions as detailed below.

First, Mr. Dodge contends EWC has no right to the water in the Cooke Creek channel. We disagree.

■ The court found the natural flow of the creek dried up by approximately mid–June of each year and the water which EWC diverted into its canal was the return flow of the foreign water brought in by the two upstream irrigation districts. The testimony of area farmers and officers of the irrigation districts in question, as well as a Department of Ecology study which was admitted at trial, provide substantial evidence in support of this finding, *i.e.*, evidence sufficient "to persuade a fair–minded, rational person of the truth of the declared premise." *Beeson v. ARCO*, 88 Wn.2d 499, 503, 563 P.2d 822 (1977). The fact Mr. Dodge offered conflicting evidence does not defeat the finding. It is the superior court's role to resolve factual disputes. *Beeson v. ARCO, supra.*

Based on this finding, the court concluded that EWC, as the first taker, had a right to these return flows. Mr. Dodge argues this water is public water and rights thereto may only be acquired by appropriation. RCW 90.03.010.[2] But in *Elgin v. Weatherstone*, 123 Wash. 429, 433, 212 P. 562 (1923), a suit which arose after the appropriation by permit system took effect in 1917, the court held that foreign

---

[1]Mr. Dodge ultimately stipulated that he had not suffered any crop damage as a result of the company's acts, since the channel presently collected enough water below the canal to meet his needs.

[2]In Washington, a would–be appropriator must apply to the State for a permit. RCW 90.03.250.

water, once abandoned by its developer, does not become part of the natural flow of the drainage area where it is discharged and may be used by the first person who takes it.

Mr. Dodge asserts that *Elgin* is based on the assumption that the first taker will use the water in that same watershed, and, thus, the water will find its way back into the channel from which it is taken. Here, the court concluded EWC could divert all the return flow in the channel "to balance its system, for flood control or to deliver said water to its patrons for irrigation." Mr. Dodge does not cite to evidence that this use is routinely outside the Cooke Creek watershed.[3] Furthermore, he cites no authority for the proposition that use outside the watershed is prohibited. While the issue was not raised in *Elgin,* the court, at page 432, quoted with approval *E. Clemens Horst Co. v. New Blue Point Mining Co.,* 177 Cal. 631, 639, 171 P. 417 (1918), which states: "the ones who first secured it may not be deprived of the right to the use of it, *even outside of the watershed,* . . . [by a lower riparian owner]." (Italics ours.)

Thus, we find no error in the court's conclusion that EWC may properly divert the water in the Cooke Creek channel.

Second, Mr. Dodge argues that he. has superior rights to the channel water based upon (1) prescriptive use, (2) the Olmstead filing, and (3) the 1905 limiting agreement. Again, we disagree.

I

PRESCRIPTIVE USE

At trial, Mr. Dodge attempted to prove that before 1977 EWC let about the same amount of water flow downstream

---

[3]The only evidence cited by Mr. Dodge was evidence that on one occasion EWC released water from the Cooke Creek channel into Park Creek. EWC explained that extra water was present in the channel on that date because Cascade was demossing its system. This single occurrence is not proof that EWC uses the return flow diverted from Cooke Creek in another watershed.

as flowed into its canal at its intersection with Cooke Creek, and that he used this water to irrigate his property. He argued that he gained a prescriptive water right as a result of this practice.

However, the court found that EWC's policy had always been to divert all the channel water and that what water was released was seepage, intentional diversions to balance the system, for irrigation sets for downstream shareholders, or for flood control. We have reviewed the record and hold that it contains substantial evidence to support this finding.[4] *Beeson v. ARCO, supra.* Accordingly, Mr. Dodge's argument that he has a prescriptive water right fails on the facts found by the court, based upon substantial evidence.

Mr. Dodge's position also fails legally. While *Elgin* reserved the question of whether there can be a prescriptive right in foreign water, the court's analysis on the issue decided does not support such a right. The appellants had argued that since they had used the foreign water for several years before the respondent commenced using it, they were the "first takers" of the foreign water. The court answered: "The fact that they took them last year does not give them a right to take them this year. . . . The vagrant waters of yesterday are not those of today." *Elgin,* at 433. The same rationale defeats an argument for a water right in the return flow of foreign water based upon prescriptive use.

Our conclusion is supported by *Stevens v. Oakdale Irrig. Dist.,* 13 Cal. 2d 343, 350–51, 90 P.2d 58, 61–62 (1939), which held:

> When possession of the actual water [brought in from a different watershed] . . . has been relinquished, . . . property in it ceases. *This is not the abandonment of a water right, but merely an abandonment of specific portions of water . . .* [The] past abandonment by defendant of certain water, as distinguished from a water right, has not conferred upon plaintiffs any right to compel a

---

[4]The court's finding with respect to Cascade's diversion practices is also supported by substantial evidence.

like abandonment in the future . . . [T]he appropriator merely secures the *corpus* of the water thus escaping as personalty, but does not thereby secure or acquire the right to the continuous flow of such water.

(Italics ours.) Accordingly, no water rights, prescriptive or otherwise, exist in these waters.

## II
### THE OLMSTEAD CLAIM

Until the adoption of the 1917 water code, water could be appropriated by actually taking the water and putting it to a beneficial use. *Department of Ecology v. Abbott,* 103 Wn.2d 686, 691–92, 694 P.2d 1071 (1985); *In re Crab Creek & Moses Lk.,* 134 Wash. 7, 15, 235 P. 37 (1925); *see also Hunter Land Co. v. Laugenour,* 140 Wash. 558, 565, 250 P. 41 (1926). Here, there was no evidence Mr. Olmstead ever used the water claimed in his 1882 notice. Hence, the court properly concluded Mr. Dodge had no rights through Mr. Olmstead.

## III
### THE LIMITING AGREEMENT

Mr. Dodge asserts he is a third party beneficiary to the 1905 agreement between EWC and the Bureau of Reclamation and, therefore, can enforce the limits it imposes on EWC's use of the water of the Yakima River and its tributaries, which includes Cooke Creek.

A third party is not a beneficiary of a contract unless, considering the contract as a whole and in light of the circumstances of its formation, the contracting parties objectively intended the promisor to assume a direct obligation to the third person. *Postlewait Constr., Inc. v. Great Am. Ins. Cos.,* 106 Wn.2d 96, 99, 720 P.2d 805 (1986). The key is "'whether performance under the contract would necessarily and directly benefit' that party." *Postlewait* (quoting *Lonsdale v. Chesterfield,* 99 Wn.2d 353, 361–62, 662 P.2d 385 (1983)).

Mr. Dodge relies on the following language in the agreement:

the officers of the Reclamation Service . . . have found that all the low–water flow of the Yakima river and its tributaries has been appropriated and is now being diverted by the various canals within said water–shed . . . [N]o irrigation project . . . within the said water–shed can be recommended as feasible unless the quantity of water to which *each present user* from the Yakima river and its tributaries is entitled be first definitely ascertained and agreed to . . .

(Italics ours.)

According to Mr. Dodge, "each present user" includes his property. We disagree. "Each present user" refers to the parties to the limiting agreements, *i.e.,* the various canals then diverting the low water flow of the Yakima River and its tributaries. The only benefit which Mr. Dodge's property could have derived from the 1905 agreement between EWC and the reclamation service was from the irrigation project it facilitated, and then only if the property was served by the new irrigation district. It was not in the contemplation of the parties nor was it a necessary effect of their agreement that the water thereby saved would be used by downstream owners. *Postlewait Constr., Inc. v. Great Am. Ins. Cos., supra.*

*West Side Irrig. Co. v. Chase,* 115 Wash. 146, 196 P. 666 (1921), cited by Mr. Dodge, does not stand for the proposition that any third party can enforce the 1905 limiting agreements. Rather, it holds that the State hydraulic engineer has authority pursuant to the water code of 1917 to issue orders enforcing such agreements.

Thus, the court did not err when it concluded Mr. Dodge had no rights under the limiting agreement.[5]

---

[5]Mr. Dodge also assigns error to the court's conclusion that he had no right to the natural flow of Cooke Creek based on a 1921 adjudication of water rights in the creek, hereinafter referred to as the Anderson case. Mr. Dodge does not dispute the fact that neither he nor his predecessor were parties to that adjudication. Nor does he claim the service of process in Anderson, which was by publication except for certain named landowners, was defective. Rather, he relies on that portion of the decree which states that creek waters in excess of those apportioned belong to the public and are subject to appropriation. The simple answer is that under *Elgin* the return flow of foreign water which finds its way into the Cooke

The judgment of the Superior Court is affirmed.

Munson and Thompson, JJ., concur.

Review denied by Supreme Court March 3, 1987.

Creek channel is not part of the natural flow and is not public water subject to appropriation.