# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| RICHARD A. FOX and MARNIE B. FOX, husband and wife,<br><br>Appellants,<br><br>v.<br><br>SKAGIT COUNTY, a municipal corporation, SKAGIT COUNTY BOARD OF HEALTH, an RCW 70.05 local board of health, DALE PERNULA, DIRECTOR of the SKAGIT COUNTY PLANNING AND DEVELOPMENT SERVICES and JENNIFER KINGSLEY, DIRECTOR of the SKAGIT COUNTY BOARD OF HEALTH AKA SKAGIT COUNTY PUBLIC HEALTH DEPARTMENT, STATE OF WASHINGTON, DEPARTMENT OF ECOLOGY, SWINOMISH INDIAN TRIBAL COMMUNITY,<br><br>Respondents. | NO. 73315-0-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION<br><br>FILED: April 11, 2016 |

LAU, J. — Richard and Marnie Fox appeal the trial court's order denying their motion for a writ of mandamus seeking to compel Skagit County to issue a building permit. The Foxes argue the trial court erred when it ruled that the well on their

property, despite being exempt from the water permit requirement, is not an adequate water supply for purposes of the building permit statute because the well is subject to senior water rights—namely, the 2001 instream flow rule for the Skagit River. We conclude that a permit-exempt well under RCW 90.44.050 is subject to the prior appropriation doctrine and therefore may be limited by senior water rights, including the instream flow rule. Accordingly, because the Foxes' well may be interrupted, water is not legally available for purposes of their building permit application. We affirm.

## FACTS

The main facts are undisputed. In March 2014, Richard and Marnie Fox submitted a building permit application to construct a single-family house near Sedro-Woolly, Washington. Skagit County determined the building permit application was "incomplete" because the Foxes failed to demonstrate that they had access to an adequate and reliable source of water for the proposed home. Clerk's Papers (CP) at 666. The Foxes' only source of water is a well on their property. The parties agree the well is in hydraulic continuity[1] with the Skagit River. The 2001 instream flow rule curtails the exercise of water rights when minimum flow requirements for the Skagit River are not met. See generally, WAC 173-503. The parties agree that the Skagit River regularly falls below the minimum flow requirement.[2] The Foxes responded to the County by claiming that despite the instream flow rule, their well was exempt from water

---

[1] "Hydraulic continuity" is the term used to describe underground water sources or aquifers that are connected to rivers and other surface water sources.

[2] For example, since 2005, there have been 5 years where the river fell below the minimum flow requirement for 100 days or more. Since 1995, the Skagit River has fallen below the minimum for several days each year, ranging from a low of 29 days in 2013 to a high of 181 days in 2009.

rights permitting requirements because they only sought groundwater for single domestic use not to exceed 5,000 gallons per day. RCW 90.44.050 ("no withdrawal of public groundwaters of the state shall be begun . . . EXCEPT, HOWEVER . . . for single or group domestic uses in an amount not exceeding five thousand gallons a day . . . ."). The County took no action following this response.

On May 23, the Foxes filed a petition for writ of mandamus in Skagit County Superior Court, seeking to compel the County to either issue a building permit or respond and show cause as to why the permit should not be issued. On June 6, the trial court issued an alternative writ commanding the County to issue a building permit to the Foxes or appear and show cause for declining to issue the permit. On June 26, the County responded, reiterating that "[t]he Skagit River instream flows prescribed under WAC 173-503 [the instream flow rule] apply to Mr. Fox's proposed use of permit-exempt groundwater, and he has not demonstrated that his proposed groundwater withdrawal will not impact flows in these tributaries and the Skagit River." CP at 234. In July 2014, the trial court granted the Swinomish Indian Tribal Community's (the Tribe) and the Department of Ecology's (the Department) motions to intervene in the action.

After considering briefs and oral argument, the trial court denied the Foxes' petition for writ of mandamus. On February 2, 2015, the trial court entered its order denying motion to affirm writ of mandamus. The trial court agreed with the Department that the instream flow rule under WAC 173-503 governed permit-exempt groundwater use that is in hydraulic continuity with the Skagit River, including the Foxes' well. The trial court denied the Foxes' motion for reconsideration. The Foxes appeal.

ANALYSIS

Standard of Review

A writ of mandamus "may be issued by any court . . . to compel the performance of an act which the law especially enjoins as a duty . . . ." RCW 7.16.160. "[W]hether a statute specifies a duty that the person must perform is a question of law." River Park Square, LLC v. Miggins, 143 Wn.2d 68, 76, 17 P.3d 1178 (2001). Accordingly, whether the County had a legal duty to grant the Foxes' request for a building permit is a question of law we review de novo. See Cost Mgmt. Serv., Inc. v. City of Lakewood, 178 Wn.2d 635, 649, 310 P.3d 804 (2013).

Permit-Exempt Wells are Subject to the Prior Appropriation Doctrine

The core issue in this case involves whether the prior appropriation doctrine applies to a well that is exempt from the permit procedure to withdraw public groundwater under RCW 90.44.050. We conclude that these permit-exempt wells are subject to the prior appropriation doctrine. Therefore, the Foxes' well cannot infringe senior water rights, including the 2001 instream flow rule.

An individual seeking a building permit must demonstrate to the local licensing authority that an adequate water supply is available:

> Each applicant for a building permit of a building necessitating potable water shall provide evidence of an adequate water supply for the intended use of the building. Evidence may be in the form of a water right permit from the department of ecology, a letter from an approved water purveyor stating the ability to provide water, or another form sufficient to verify the existence of an adequate water supply.

RCW 19.27.097(1). "[C]ounties must assure that . . . water is both factually and legally available." Kittitas County v. Eastern Wash. Growth Mgmt. Hr'gs Bd., 172 Wn.2d 144,

-4-

180, 256 P.3d 1193 (2011). The Foxes allege that water is "legally available" to their proposed building because it is exempt from the water permit process under RCW 90.44.050:

> After June 6, 1945, no withdrawal of public groundwaters of the state shall be begun, nor shall any well or other works for such withdrawal be constructed, unless an application to appropriate such waters has been made to the department and a permit has been granted by it as herein provided; EXCEPT, HOWEVER . . . for single or group domestic uses in an amount not exceeding five thousand gallons a day . . . is and shall be exempt from the provisions of this section, but, to the extent that is regularly used beneficially, shall be entitled to a right equal to that established by a permit issued under the provisions of this chapter.

RCW 90.44.050. The Foxes' well is for domestic purposes and will draw less than 5,000 gallons per day. Thus, it is exempt from the permitting process, and they are entitled to "a right equal to that established by a permit." RCW 90.44.050. The Foxes contend this exemption satisfies the building permit requirement for "evidence of an adequate water supply" because it is the legal equivalent of a "water right permit from the department of ecology . . . or another form sufficient to verify the existence of an adequate water supply." RCW 19.27.097(1).[3]

Although this exemption from the water permitting process may establish a right to withdraw groundwater, that right is not absolute. The overall statutory scheme and case law both demonstrate that superior water rights may limit a right to withdraw groundwater via a permit-exempt well.

---

[3] The parties agree that the Foxes never sought a water right permit and that obtaining water through a public utility is unlikely, so they were unable to obtain "a letter from an approved water purveyor stating the ability to provide water." RCW 19.27.097(1).

Appropriations of groundwater under chapter 90.44 RCW—the chapter containing the Foxes' alleged "exemption"—are subject to the prior appropriation doctrine. RCW 90.44.020 expressly provides that chapter 90.44 RCW "shall be supplemental to chapter 90.03 RCW . . . and is enacted for the purpose of extending the application of such surface water statutes to the appropriation and beneficial use of groundwaters within the state." RCW 90.44.020. Chapter 90.03 RCW, the general water code, contains the longstanding principle that water appropriations have priority over other appropriations acquired later in time: "as between appropriations, the first in time shall be the first in right." RCW 90.03.010 (emphasis added). Chapter 90.44 RCW acknowledges this same principle:

> The rights to appropriate the surface waters of the state and the rights acquired by the appropriation and use of surface waters shall not be affected or impaired by any of the provisions of this supplementary chapter [ch. 90.44 RCW] and, to the extent that any underground water is part of or tributary to the source of any surface stream or lake, or that the withdrawal of groundwater may affect the flow of any spring, water course, lake, or other body of surface water, the right of an appropriator and owner of surface water shall be superior to any subsequent right hereby authorized to be acquired in or to groundwater.

RCW 90.44.030 (emphasis added). Water obtained under RCW 90.44.050 through either a permit or a permit-exempt well constitutes an "appropriation." RCW 90.44.050 (describing a permit to withdraw water as "an application to appropriate such waters . . . ." (emphasis added)). Therefore, because withdrawing water from a permit-exempt well constitutes an appropriation, and because chapter 90.44 RCW is intended to "extend[ ] the application of such surface water statutes to the appropriation . . . of groundwaters," RCW 90.44.020, appropriations under RCW 90.44.050 are subject to the general rule that "first in time shall be first in right." RCW 90.03.010. Although the exemption under

RCW 90.44.050 grants the Foxes a right to withdraw groundwater, like any other right to appropriate groundwater, it is nevertheless subject to the longstanding rule that first in time shall be first in right.

The superior right here is the minimum instream flow rule the Department established for the Skagit River. See WAC 173-503. RCW 90.22.010 empowers the Department to "establish minimum water flows or levels for streams, lakes or other public waters . . . ." RCW 90.22.010. These minimum flow levels "constitute appropriations within the meaning of this chapter with priority dates as of the effective dates of their establishment." RCW 90.03.345. Accordingly, these minimum flow levels are like any other water appropriation right—they cannot affect existing water rights, and they take priority over subsequently established rights. See RCW 90.22.030; see also Hubbard v. State, 86 Wn. App. 119, 936 P.2d 27 (1997). The Department promulgated WAC 173-503 in 2001, establishing a minimum flow for the Skagit River. Like any water appropriation, these minimum flow requirements take priority over subsequently acquired water appropriations that would impair the Department's designated minimum flow level. See Postema v. Pollution Control Hr'gs Bd., 142 Wn.2d 68, 81, 11 P.3d 726 (2000) ("Thus, a minimum flow set by rule is an existing right which may not be impaired by subsequent groundwater withdrawals.").[4] The statutory scheme dictates that the

---

[4] The Foxes cite the following passage from Postema several times in their brief: "Additionally, we reject the premise that the fact that a stream has unmet flows necessarily establishes impairment if there is an effect on the stream from groundwater withdrawals." Postema, 142 Wn.2d at 93. This does not support the Foxes' argument that their permit-exempt well is not subject to the senior water rights protected by the instream flow rule. The Foxes ignore the Court's language in the following paragraph: "We hold that hydraulic continuity of an aquifer with a stream having unmet minimum flows is not, in and of itself, a basis for denial of a groundwater application, and

Foxes' right to withdraw water from their permit-exempt well is subject to the superior water rights protected by the instream flow rule.

Washington Supreme Court authority is consistent with this interpretation. In Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 43 P.3d 4 (2002), the Court unambiguously held that water obtained from a permit-exempt well is treated as any other water right and is therefore subject to the prior appropriation doctrine:

> While the exemption in RCW 90.44.050 allows appropriation of groundwater and acquisition of a groundwater right without going through the permit or certification procedures of chapter 90.44 RCW, once the appropriator perfects the right by actual application of the water to beneficial use, the right is otherwise treated in the same way as other perfected rights. RCW 90.44.050. Thus, it is subject to the basic principle of water rights acquired by prior appropriation that the first in time is the first in right.

Campbell & Gwinn, 146 Wn.2d at 9 (emphasis added); see also Campbell & Gwinn, 146 Wn.2d at 17 n.8 ("RCW 90.44.050 itself provides that a right acquired under the exemption is to be treated as all other rights, and thus is subject to the prior appropriation doctrine's first in time first in right principle.")[5]

_____

accordingly affirm the superior courts. However, where there is hydraulic continuity and withdrawal of groundwater would impair existing surface water rights, including minimum flow rights, then denial is required." Postema, 142 Wn.2d at 93 (emphasis added). Therefore, the Foxes' permit-exempt well is still subject to Skagit River's minimum flow rights.

[5] The Foxes repeatedly cite Campbell & Gwinn for the proposition that the statutory exemption in RCW 90.44.050 precludes the Department from employing the four criteria for approval of a water rights permit under RCW 90.03.290, and that therefore a permit-exempt well renders any consideration of existing water rights unnecessary. See Campbell & Gwinn, 146 Wn.2d at 16 ("Ecology does not engage in the usual review of a permit application under RCW 90.03.290."). But the Foxes fail to acknowledge that the Court expressly held that permit-exempt water rights under RCW 90.44.050 are nevertheless subject to prior appropriation doctrine and therefore may be curtailed by senior water rights. Campbell & Gwinn, 146 Wn.2d at 17 n.8

The Court reiterated this point in <u>Swinomish Indian Tribal Community v. Dep't of Ecology</u>, 178 Wn.2d 571, 311 P.3d 6 (2013), where it addressed several 2006 amendments to the 2001 instream flow rule. The amendments sought to reserve water for certain uses—including permit-exempt wells—despite whether those uses impaired the minimum flow requirements for the Skagit River. <u>Swinomish</u>, 178 Wn.2d at 578-79. The Department recognized that the 2001 instream flow rule had priority over subsequently acquired water rights, and it therefore believed reservations were necessary to create water access for certain limited uses: "Ecology found that important public interests would be significantly advanced by the reservations because without them, new withdrawals . . . would be interrupted when stream flows fall to the minimums established under the 2001 Instream Flow Rule; new sources of water were otherwise unavailable through most of the basin as a practical matter; and economic productivity would be gained." <u>Swinomish</u>, 178 Wn.2d at 579. The Department relied on the "overriding considerations" exception in RCW 90.54.020(3)(a) to justify the reservations. RCW 90.54.020(3)(a) ("Withdrawals of water which would conflict [with] [minimum flow requirements] shall be authorized only in those situations where it is clear that overriding considerations of the public interest will be served."). The Court held that these reservations were invalid because the overriding-considerations exception could not alter the priority date of water appropriations that would otherwise be subject to the senior instream flow rule, including permit-exempt wells:

> [T]he overriding-considerations exception cannot reasonably be read to replace the many statutes that pertain to appropriation of the state's water and minimum flows. Existing statutes govern applications to beneficially use water for the purposes for which the reservations were made here. For example, Ecology determined that noninterruptible water

is needed for some domestic exempt wells because, <u>while there is a current provision for exempt wells, the appropriators' right to use the water is subject to rights with priority in time.</u> But exempt wells are provided for by statute and Ecology's actions on applications for exempt wells are clearly set out in the water code—without any provision permitting a "jump to the head of the line" in priority as a result of Ecology's reservations of water and use of the overriding-considerations exception. <u>See</u> RCW 90.44.050.[14]

---

14. The dissent engages in a "factual analysis" intended to show that exempt well uses and rural public water supply systems qualify under a cost-benefit analysis for consideration under the overriding-considerations exception. But the analysis simply shows what is always true—there are hardships attendant to <u>any</u> water right with a later priority date and too little water available to satisfy all rights. The dissent also claims that the reallocations of water for exempt well users and rural public water systems should be permitted since they involve only small quantities of water and will have little impact on minimum flows. But the overriding-considerations exception is not a grant of general authority to reallocate water subject to existing water rights regardless of whether the impact on minimum flows and instream uses would be substantial or slight.

<u>Swinomish</u>, 178 Wn.2d at 598 n.14 (emphasis added). <u>Swinomish</u> controls here: "the appropriators' right to use the water [from a permit-exempt well] is subject to rights with priority in time." <u>Swinomish</u>, 178 Wn.2d at 598.[6] The Foxes' right to use their permit-exempt well is subject to the superior water rights protected by the 2001 instream flow rule.

Both the statutory scheme and case law demonstrate that water is not legally available for purposes of the Foxes' building permit. An exemption under RCW 90.44.050 provides a right to withdraw groundwater legally equivalent to the right

---

6 The Foxes briefly mention that <u>Swinomish</u> was limited to circumstances where someone actually applies for a water permit. But nothing in the statutory scheme or in the Court's language in <u>Swinomish</u> suggests such a limitation. The <u>Swinomish</u> Court meant exactly what it said: permit-exempt wells are subject to the prior appropriation doctrine.

obtained via a permit. Therefore, a permit-exempt well, like any other groundwater appropriation, is subject to prior appropriation doctrine. RCW 90.03.010 ("as between appropriations, the first in time shall be the first in right.") The Washington Supreme Court recognized this straightforward reading of the statutory scheme in Campbell & Gwinn: "RCW 90.44.050 itself provides that a right acquired under the exemption is to be treated as all other rights, and thus is subject to the prior appropriation doctrine's first in time first in right principle." Campbell & Gwinn, 146 Wn.2d at 17 n.8. Because the Foxes' permit-exempt well is subject to the prior appropriation doctrine, it cannot impair the senior water rights protected by the 2001 instream flow rule. See RCW 90.22.030. This is exactly what the Court held in Swinomish: "the appropriators' right to use the water [from a permit-exempt well] is subject to rights with priority in time." Swinomish, 178 Wn.2d at 598. In short, there is overwhelming legal authority that supports the trial court's order denying the Foxes' motion for a writ of mandamus because water is not legally available for their permit-exempt well. The statutory exemption grants them a right to withdraw groundwater from their well. But this right cannot supersede senior water rights such as the minimum flow requirement in the 2001 instream flow rule.

### The Foxes' Remaining Arguments are Unpersuasive

The Foxes' remaining arguments purport to show that their well is not subject to the senior water rights protected by the 2001 instream flow rule. We are not persuaded by these arguments.

### The building permit process must be consistent with state law

First, the Foxes argue that the County must issue a building permit when RCW 19.27.097 and relevant sections of the Skagit County Code (SCC) are satisfied. They

rely on RCW 19.27.095(2), which provides that "[t]he requirements for a fully completed application shall be defined by local ordinance." RCW 19.27.095(2). The SCC defines "adequate water supply" as "a water supply which is capable of supplying at least three hundred fifty (350) gallons of water per day, meets siting criteria established by State and local regulations, and meets water quality standards in SCC 12.48.110." SCC § 12.48.030. According to the Foxes, because RCW 19.27.095(2) grants counties the authority to define the requirements for a building application, the County here need only apply its own definition of "adequate water supply" for purposes of the building application process under RCW 19.27.097. Therefore, the County had no discretion to consider the legal availability of water beyond its own local definition for "adequate water supply," and the trial court erred when it assumed the 2001 instream flow rule prevented the County from issuing a building permit.

The building permit process must be consistent with state law. The Foxes suggest the County's analysis is limited to its own local ordinance. But the SCC expressly provides that its provisions must comply with the state water code and the instream flow rule specifically: "[t]he purpose of these rules is to . . . (3) Whenever possible, carry out powers in manners which are consistent with Chapter 90.54 RCW and Chapters 173-503 and 173-505 WAC." SCC § 12.48.010(3) (emphasis added). Contrary to the Foxes' argument, the County had the discretion to consider whether the instream flow rule prevented legal access to water in this case.

Even under the County's own definition of "adequate water supply," water is unavailable to the Foxes. As discussed above, permit-exempt wells like the Foxes' are subject to the prior appropriation doctrine. See Swinomish, 178 Wn.2d at 598. The

-12-

Foxes' well may be interrupted any time the Skagit River falls below minimum flow requirements under WAC 173-503. A well that is subject to interruption is not "capable of supplying at least three hundred fifty (350) gallons of water per day." SCC § 12.48.030.

Under the Foxes' interpretation of the building permit statute and the SCC, the County essentially has the authority to issue building permits in violation of state law. This is an illogical result.

The Foxes concede that "[o]rdinances are to be interpreted consistent with state law." Br. of Appellant at 14 (citing Eugster v. City of Spokane, 118 Wn. App. 383, 406, 76 P.3d 741 (2003)). A county cannot override state law. See Cannabis Action Coalition v. City of Kent, 183 Wn.2d 219, 227, 351 P.3d 151 (2015) ("state law preempts a local ordinance when [it] permits what state law forbids or forbids what state law permits."). The building permit application process must be consistent with state law, including the hierarchy of water rights established by the prior appropriation doctrine.

Kittitas does not preclude consideration of the instream flow rule

The Foxes rely on Kittitas arguing the test for legal availability of water is satisfied when an applicant properly qualifies for a permit-exempt well under RCW 90.44.050. Kittitas is inapposite. Kittitas demonstrates that water is not legally available when water access would infringe senior water rights:

> The parties dispute whether the requirement of RCW 58.17.110 that counties assure appropriate provisions are made for potable water supplies means only that counties must assure that water is factually available underground or that water is both factually and legally available.
> . . . .
> To interpret the County's role under RCW 58.17.110 to only require the County to assure water is physically underground effectively allows the

-13-

County to condone the evasion of our state's water permitting laws. This could come at a great cost to the existing water rights of nearby property owners, even those in adjoining counties, if subdivisions and developments overuse the well permit exemption, contrary to law.

. . . .

The [Growth Management Act] requires that counties provide for the protection of groundwater resources and that county development regulations comply with the GMA. The Board properly interpreted the GMA's mandate to protect water to at least require that the County's subdivision regulations conform to statutory requirements by not permitting subdivision applications that effectively evade compliance with water permitting requirements.

Kittitas, 172 Wn.2d at 179-81. Nowhere in Kittitas does the Court suggest that a permit-exempt well, alone, satisfies the "adequate water supply" requirement in RCW 19.27.097. Instead, Kittitas requires that water be legally available to permit applicants and this analysis requires consideration of senior water rights.

Consideration of senior water rights is not confined to general stream adjudications

The Foxes contend that "[t]o interpret the legal availability portion of 'adequate' water in RCW 19.27.097 to include a determination by the County of priority of water rights (i.e. the Foxes right versus the Instream Flow Rule), would be inconsistent . . . with the general stream adjudication procedures which the legislature has vested solely in the superior courts, initiated by Ecology, to afford proper due process." Br. of Appellant at 16. We disagree. The County had authority to consider the priority of water rights, including the instream flow rule.

The Foxes primarily rely on Rettkowski v. Dep't of Ecology, 122 Wn.2d 219, 858 P.2d 232 (1993). In Rettkowski, the Court held that the Department had no authority to issue cease and desist orders to water users it believed were infringing senior water rights. Instead, the Department was required to use the general adjudication

-14-

procedures under RCW 90.03. <u>Rettkowski</u>, 122 Wn.2d at 234. But <u>Rettkowski</u> involved water users with existing, valid permits. <u>Rettkowski</u>, 122 Wn.2d at 236-37. The Court acknowledged that, during the permit application process, the Department has the authority to consider whether a water user infringes senior water rights: "The inquiry in that situation is relatively straightforward: is there water available to apportion, is the proposed use beneficial and not detrimental to the public interest, and is there any conflict with existing water rights." <u>Rettkowski</u>, 122 Wn.2d at 228. The County's analysis under the building permit process is analogous. RCW 19.27.097. As discussed above, the County's own local code provides that it should be applied consistently with WAC 173-503 (the instream flow rule). The County had the authority to consider whether the Foxes' well infringed senior water rights generally and the instream flow rule in particular.

<u>The Foxes lack any riparian or correlative water rights</u>

Relying on <u>Dep't of Ecology v. Abbott</u>, 103 Wn.2d 686, 694 P.2d 1071 (1985), the Foxes argue their riparian or correlative right to use their well means this right is superior to the instream flow rule. This argument fails.

In <u>Abbott</u>, the Court held that "the 1917 water code established prior appropriation as the dominant water law in Washington" and that, "[a]fter 1917, new water rights may be acquired only through compliance with the permit system and existing water rights not put to beneficial use are relinquished." <u>Abbott</u>, 103 Wn.2d at 687. The Foxes concede that the water code "removed all possibility of origination of water rights from . . . unused riparian rights to surface water." Br. of Appellant at 24. They nevertheless cite <u>Abbott</u> for the proposition that "the groundwater code did not

remove certain carefully circumscribed unused groundwater riparian rights because of the exemptions in RCW 90.44.050." Br. of Appellant at 24.

The Foxes point to language where the Court suggests that a domestic exemption existed for groundwater but not surface water:

> The trial judge in this case, despite the shift away from the primacy of riparian rights by the courts and Legislature, concluded that the appropriative permit system embodied in the 1917 water code applied only to *surplus* waters in excess of those required for "ordinary" or "natural" domestic uses by riparians. He also interpreted the forfeiture provisions of the water rights act as applying only to public uses enumerated in article 1, section 16 of the state constitution. Although we need not decide questions concerning that here, even partial adoption of the trial court opinion would effectively create a domestic use exemption from the permit system and state management of water resources. The Legislature did expressly create a domestic exemption in the groundwater code, RCW 90.44.050, but it has never seen fit to create such an exemption for surface water.

Abbott, 103 Wn.2d at 693. They claim this language shows the statutory exemption saved riparian or correlative rights for domestic purposes.

This interpretation is inconsistent with the water code. Just as the 1917 code eliminated riparian rights to surface water, the 1945 code eliminated riparian rights to groundwater:

> Subject to existing rights, all natural groundwaters of the state as defined in RCW 90.44.035, . . . are hereby declared to be public groundwaters and to belong to the public and to be <u>subject to appropriation for beneficial use under the terms of this chapter and not otherwise</u>.

RCW 90.44.040 (emphasis added). Further, the Supreme Court recognized the purpose and effect of the groundwater code is the same as the surface water code insofar as both "are premised on the doctrine of prior appropriation." Campbell & Gwinn, 146 Wn.2d at 7-8. The Abbott language suggests only that the statutory

-16-

exemption under RCW 90.44.050 exempts some water users from the permit process, not prior appropriation doctrine altogether. See Swinomish, 178 Wn.2d at 598 ("the appropriators' right to use the water [from a permit-exempt well] is subject to rights with priority in time.").[7]

### The instream flow rule applies to the Foxes' well

The Foxes disagree that the 2001 instream flow rule applies to their well. Relying on RCW 90.54.010(1) and RCW 90.54.020(5), they argue that water must be preserved for domestic use and no instream flow rule can limit permit-exempt domestic wells. They also argue because RCW 90.03.247 requires permits to be conditioned to protect instream flow rights, permit-exempt wells are not subject to such rights.

The Foxes' reliance on these statutes to create an exception to senior instream flow rights is misplaced. RCW 90.03.345 expressly provides that minimum flow levels "constitute appropriations . . . with priority dates as of . . . their establishment." Courts have consistently recognized that minimum flow levels have priority over subsequently acquired rights, including permit-exempt wells. See Campbell & Gwinn, 146 Wn.2d at 17 n.8; Swinomish, 178 Wn.2d at 598. In Swinomish, the Court commented on several of the statutes cited by the Foxes, noting they were not "meant to override minimum flow rights" and do not "conflict with the statutes authorizing or mandating rules setting minimum flows" or with those "respecting priority of minimum rights." Swinomish, 178 Wn.2d at 585.

---

[7] The Foxes rely on two other cases to support their riparian or correlative water rights theory. See State Highway Comm'n v. Ponten, 77 Wn.2d 463, 463 P.2d 150 (1969), Welch v. Dep't of Ecology, No. 98-108, 2000 WL 871699 (Wash. Pollution Control Hr'gs Bd. May 4, 2000). Neither case is helpful.

Nor do any of the Department rules suggest the instream flow rule does not apply. The Foxes claim that WAC 173-503-040(5) and WAC 173-503-060 indicate that instream flow rights apply only to permitted wells. WAC 173-503-040(5) states the exact opposite:

> Future consumptive water right permits issued hereafter for diversion of surface water . . ., and <u>withdrawal of groundwater in hydraulic continuity with surface water in the Skagit River and perennial tributaries, shall be expressly subject to instream flows</u> established in [the Rule], and also subject to WAC 173-503-060.

WAC 173-503-040(5) (emphasis added); see also Whatcom County v. Western Wash. Growth Mgmt. Hearing Bd., 186 Wn. App. 32, 60, 344 P.3d 1256 ("[WAC 173-503-040(5)] expressly indicates that it governs permit-exempt uses of water.").

WAC 173-503-060 also fails to support the Foxes' claim. That rule provides:

> If the department determines that there is hydraulic continuity between surface water and the proposed ground water source, a water right permit or certificate shall not be issued unless the department determines that withdrawal of ground water from the source aquifer would not interfere with stream flows during the period of stream closure or with maintenance of minimum instream flows.

WAC 173-503-060. The Foxes contend that because this rule omits permit-exempt wells, the instream flow rule applies only to permitted wells. But nothing in this rule limits the other rules in the same section that unambiguously provide that the instream flow rule applies to all groundwater withdrawals including permit-exempt wells. See WAC 173-503-040(5), 173-503-050(1)-(2); see also Whatcom County, 186 Wn. App. at 60, Swinomish, 178 Wn.2d at 598.

The Foxes selectively highlight portions of the rule-making record to support their argument that the instream flow rule does not apply to permit-exempt wells. These

excerpts were not submitted to the trial court. In any event, the record shows the Department intended to apply the instream flow rule to all future appropriations, including permit-exempt wells. The instream flow rule was developed in part to "reduce the use of exempt wells in those areas of the County experiencing inadequate instream flows . . . as a result of groundwater withdrawal." CP at 343-45; see also CP at 35 ("Exempt wells are virtually everywhere, including adjacent to small tributaries that dry up in the summer. Clusters of these exempt wells could have a detrimental effect on these small streams."). No statute or administrative rule protects the Foxes' well from the instream flow rule.

<u>The Foxes lack any senior water right</u>

The Foxes argue they have an appropriative water right senior to the 2001 instream flow rule. The Foxes failed to present evidence that they manifested the requisite intent to appropriate the water necessary for their proposed building.

In order to establish a common law appropriative water right, the Foxes must show "an intention to appropriate followed by a reasonable diligence in applying the water to a beneficial use." In re Rights to Waters of Alpowa Creek, 129 Wash. 9, 13, 224 P. 29 (1924). If both elements are met, the date of priority of the right will "relate back" to the time work was first performed to appropriate the water. Hunter Land Co. v. Laugenour, 140 Wash. 558, 565, 250 P. 41 (1926).

The Foxes argue that they manifested sufficient intent to appropriate the water when they subdivided their property in 2000, dividing the lot into two plots. This is not sufficient to prove an appropriative water right. A water right's priority date will relate back to the "first step" of an appropriation, which is "complete when overt acts coalesce

-19-

to openly demonstrate the applicant's intent to appropriate the water for a beneficial use." In re Water Rights of Vought, 76 P.3d 906, 912 (Colo. 2003). Such intent must be for a "fixed purpose to pursue diligently a certain course of action to take and beneficially use water from a particular source." In re Right to Water in Water Dist. No. 36, 696 P.2d 730, 745 (Colo. 1985). Mere subdivision of property cannot meet this level of intent. The Foxes did nothing with the property for several years. Between 2000 and 2014 they rented the land to neighbors, who used it as a horse pasture. The Foxes began construction on their well in 2011. The record fails to show the necessary diligence to support an appropriative right in 2000.

### No duty to mitigate by the Department

RCW 90.54.020(5) provides: "[a]dequate and safe supplies of water shall be preserved and protected in potable condition to satisfy human domestic needs." The Foxes argue that this subsection imposes a duty to mitigate on the Department. They claim to "preserve" an "adequate" supply of water, the Department must allow the Foxes to access water despite the instream flow rule. No legal authority supports this interpretation. See DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). The Foxes' interpretation means that certain uses will always supersede appropriative water rights. Neither the water code nor case authority suggests that the statutory scheme provides the Department the authority to override appropriated water rights. Indeed, this reasoning was central to the Court's Swinomish decision. See Swinomish, 178 Wn.2d at 598.

-20-

The Foxes' due process claim fails

The Foxes argue the County's denial of a building permit violated their due process rights. Arguably, we may ignore this argument because the issue was not sufficiently argued at the trial court and is inadequately briefed. RAP 2.5(a); Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) ("We will not consider an inadequately briefed argument.").

In any event, the Foxes' due process claim fails. The Foxes have failed to show a sufficient property interest. Greenhalgh v. Dep't of Corrections, 180 Wn. App. 876, 890, 324 P.3d 771 (2014) ("A threshold matter to a procedural or substantive due process claim is whether the plaintiff possessed a property interest."). The Foxes have no property interest because their permit-exempt well is subject to the senior water rights protected by the instream flow rule.

Even if we assume a property interest, the Foxes fail to address the remaining analysis of their due process claim. After concluding that a sufficient property interest is at stake, the reviewing court must then inquire "(1) whether the regulation aims to achieve a legitimate public purpose, (2) whether the means adopted are reasonably necessary to achieve that purpose, and (3) whether the regulation is unduly oppressive on the property owner." Robinson v. City of Seattle, 119 Wn.2d 34, 51, 830 P.2d 318 (1992). The Foxes fail to analyze any of these considerations. "[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion." Seven Gables Corp. v. MGM/UA Entertainment Co., 106 Wn.2d 1, 14, 721 P.2d 1 (1986) (quoting United States v. Phillips, 433 F.2d 1364, 1366 (8th Cir. 1970)). The Foxes' argument erodes the legal framework for appropriative water rights. That

-21-

some water rights must necessarily acquiesce to senior water rights is a natural consequence of the prior appropriation doctrine. See, e.g., Swinomish, 178 Wn.2d at 598, n.14 ("there are hardships attendant to any water right with a later priority date and too little water available to satisfy all rights.").

For similar reasons, Skagit County's due process argument also fails. The County contends the Department's instream flow rule interpretation violates the Foxes' due process rights because it repeals a statutory right by implication. Like the Foxes, the County's argument assumes the right granted under in RCW 90.44.050's exemption exists outside of prior appropriation doctrine. As discussed above, the right to withdraw water via a permit-exempt well under RCW 90.44.050 is like any other water right. That right is subject to senior rights, such as the instream flow rule. Contrary to the County's argument, the Department's instream flow rule interpretation does not "vitiate a statutory right by silence," Br. of Skagit County at 21. The statutory right includes only an exemption from the permit process, includes no right to "jump to the head of the line" of priority. Swinomish, 178 Wn.2d at 598.

We also reject the County's claim that the Department's instream flow rule interpretation is "new." The County was on notice that the rule might infringe permit-exempt wells with later priority dates. For example, the introductory comments to the proposed rule provide that it "would affect all future water use, if not exempted," CP at 277, and permit-exempt wells are not listed in the exemptions section of the rule. WAC 173-503-070. In the responsiveness summary and concise explanatory statement for the rule, issued in March 2001, the Department explained that "[g]roundwater withdrawals will be treated as surface water appropriations unless the applicant can

demonstrate the withdrawal is not hydraulically connected to the river." CP at 321. In that same statement, the Department explained a statutory exemption exempts well users only from the permit process, but those permit-exempt wells remain subject to senior water rights:

> Ecology has made statements in the environmental documents and public hearing to clarify that <u>an exempt well is only exempt from permit requirements. It becomes a water right when it is drilled and put to beneficial use. It has a priority date (the date it is put to beneficial use) and could be junior to the instream flow if put to beneficial use after the effective date of the rule</u>. The priority date of the exempt well could become important during a time of scarcity when senior rights would have to be protected.

CP at 322 (emphasis added). The County demonstrated the same understanding of the rule in a 2003 petition for review challenging the rule's validity. The County expressly acknowledged permit-exempt wells were subject to senior water rights, including the instream flow rule. Thus, the wells could not provide an adequate water supply for purposes of the building permit statute:

> Though exempt from [permitting under] RCW 90.44.050, exempt wells, like any other water use, exist within Washington's prior appropriation scheme. This means that exempt wells that are junior to the [rule] can be interrupted if the [rule's] instream flow level . . . is not being met. Interruptible water sources do not meet the requirements for an adequate reliable supply of water needed to authorize issuance of a building permit under RCW 19.27.097.

CP at 10. In 2001, the Department believed the instream flow rule would supersede subsequently acquired water rights such as permit-exempt wells, and the County understood this interpretation. As discussed above, this interpretation properly conforms with the statutory scheme and case law. See Swinomish, 178 Wn.2d at 598.

## CONCLUSION

For reasons discussed above, we affirm.

_Jay, J._

WE CONCUR:

_Specimen, C.J._                              _Cox, J._